H. H. BURWELL and others v. THE BOARD OF COMMISSIONERS OF VANCE COUNTY.

*Jail—Nuisance—Injunction—Public Officers—Construction of Statute.*

1. A jail is a public necessity, and is not a nuisance, *per se,* though by its erection and management property and residence in its vicinity may be rendered less valuable and comfortable.

2. An injunction will not be granted to restrain or supervise the exercise of the discretion conferred by law upon public officers in the discharge of their duties.

3. Under the provisions of the act establishing the county of Vance, and directing the erection of the necessary public buildings (ch. 113, Laws 1881), the board of commissioners were not required to have the jail erected upon the same lot upon which they had located the court house; but in that respect they were invested with all the powers of the other counties of this State.

(*Hyatt* v. *Myers,* 73 N. C., 232, and *Dorsey* v. *Allen,* 85 N. C., 358, cited and approved).

This was a CIVIL ACTION to enjoin the commissioners of VANCE county from erecting a jail, heard before *Shepherd, Judge,* on Spring Circuit, 1885.

The county of Vance was formed and organized under an Act of the General Assembly, ratified and taking effect on March 5, 1881 (Acts of 1881, ch. 113), and was, by section 2, invested "with all the rights, powers and privileges of the counties of this State, except as hereinafter provided."

Section 8 directs the commissioners immediately upon their election and qualification to "select a site for a court house and other necessary county buildings for said county, within the corporate limits of the town of Henderson."

Section 14 is in these words: "The said commissioners are hereby authorized to purchase a site for the court house and necessary buildings specified in section eight, and to build thereon, in addition to said court house, a public jail for said county, and they may lay a tax for raising the amount of money necessary to the same."

Pursuant to the authority conferred, the commissioners secured by donation a lot in said town, eligibly situated, rectangular in form, the equal opposite sides being respectively in length 205 and 180 feet, which was conveyed to them by deed of John S. Young and his wife Sallie J., on July 18, 1881, as therein declared, "for the purpose of erecting a court house and such other public buildings as to the board of commissioners may seem meet," following substantially the language of the statute.

On August 1st, thereafter, the commissioners, in consideration of the gift covenanted personally with the donors so to locate the said court house as to make it front or face Young street in the town of Henderson, and in conformity with this agreement it has been located and built.

Deeming it an unsuitable place for the jail, the commissioners purchased from A. C. Zollicoffer a lot on Breckinridge street, some several hundred yards distant from the court house, whereon they proposed to erect, and were about to erect the public jail when this action was begun by the plaintiffs on May 30, 1885, to restrain them from proceeding with the work.

The plaintiffs uniting in the action, own lots near that on which the jail is to be put, the plaintiff Allen, a lot with a dwelling-house on the opposite side of the same street, the plaintiffs H. H. and J. S. Burwell, a lot next to that of the plaintiff Allen, and the plaintiff Lord, a lot 100 yards distant, whereon he operates a tobacco house and employs about seventy-five workmen.

They allege in their complaint that the erection of the jail is required in the act to be on the lot where the court house is, and to put it elsewhere is extra *vires* and unwarranted; and further, that it would, by reason of the emission of noxious vapors and gases and in other ways render residences on their several grounds unhealthful and uncomfortable to the occupants, and thus impair the value of their properties. To this end, they demand that the commissoners be enjoined from carrying out their purpose in the location of the jail at the designated place. After notice, and upon hearing the numerous affidavits offered by the parties, the plaintiffs moved for a preliminary restraining order, which was denied by the Judge, and they appealed.

*Messrs. D. G. Fowle* and *E. C. Smith*, for the plaintiffs.
*C. M. Cooke, Esq.*, for the defendant.

SMITH, C. J. (after stating the case as above). Two inquiries arise out of the contention of the parties which may be considered in determining the controversy.

I. Is a public jail a nuisance in a legal sense that persons residing on lots near or adjoining thereto may obtain an order to prevent its construction from the Court; and,

II. Are the board of commissioners restrained by the act creating the county from putting it any where else than 'upon the court house lot?

1. A jail being a public necessity, indispensable in the administration of justice, and therefore required to be built, cannot in in itself be a nuisance in the sense of the law, *per se*, though its

mismanagement may render it obnoxious to those who live or do business near it, since in such case private convenience and comfort must yield to the common good. Assuming a discretion reposed in the commissioners in fixing the location of this house and their use of all proper means to render it, as far as practicable, inoffensive and not injurious to surrounding and near residents and places of business, those who occupy such could not rightfully claim the interposition of the Court to prevent its being built. For if they could thus have the aid of the Court, so could residents of any other part of the town, for the same and perhaps stronger reasons, because more thickly settled, as well as contiguous proprietors could prevent the erection elsewhere. The special damage in such case is incidental to what the general interest of the community requires and becomes *damnum absque injuria.* Otherwise no jail could be built within the town, if parties interested as these plaintiffs choose to object. All that can reasonably be required is, that the construction, and management afterwards, be such as to occasion as little inconvenience and discomfort to those living near as is consistent with the public purposes to be subserved, and nothing of the kind is suggested in the statement of grievances in the complaint. They are such only as would be objected with equal force to prevent any other location of the structure. In the forcible language of the late Chief Justice, in *Hyatt* v. *Myers*, 73 N. C., 232, quoted upon a somewhat similar application in *Dorsey* v. *Allen*, 85 N. C., 358: "If a man instead of contenting himself with the quiet and comfort of a country residence choose to live in a town, he must take the inconveniences of noise, dust, flies, rats, smoke, soot, cinders, &c., and he cannot complain if the owner of an adjoining lot, by reason of the smoke, soot and cinders, * * caused in the use and enjoyment of his property, provided the use of it be for a reasonable purpose, and the manner of using it is such as not to cause any unnecessary damage or annoyance to his neighbors."

The structure complained of is not merely a public necessity, but is required by the act to be built within the corporate limits of the town, and unless restrained in the act, its location is left to the sound discretion of the commissioners, over which the Court has not control, and if it had, the wisdom with which it has been exercised seems to have been fully sustained by the testimony.

While it is conceded that the present action could not be maintained if the selection of the place was within the authority conferred, or if not, aside from the alleged special damage threatened, the commissioners could only be restrained from going beyond its limits by a proceeding instituted by the State and its agents for the public, it is contended that, being not only in excess of power but in disregard of the statutory mandate, the erection of the jail where it is proposed to be put, is a tort, attended with positive and direct injury to the plaintiffs, for which the law does afford them the redress demanded in the action. We are thus brought to an examination of the statute to see if its terms are thus mandatory and restrictive.

If the "other necessary buildings" associated with and following the designation of a court-house, as mentioned in both sections 8 and 14, are to be understood in their most comprehensive import, it would require to be crowded upon one lot, the poor-house, house of refuge and a public hospital, should these latter two be deemed necessary, and it is quite manifest this was not within the contemplation of the act, nor were they intended to be built *only* in the town, so unsuitable in the attainment of the beneficial fruits of such structures. Code, §707, ¶¶17, 21, 22.

The counsel for appellants restricts these words so far as to confine them to such buildings as may be needed, as offices for county officers whose business is more immediately connected with that for which the court house is built; but insists that the jail designated by name in section 14 must be on the same lot with the court house, and this by force of the words "to build thereon," that is, on the site for the court house and necessary buildings, a public jail for said county. In our construction of the act and

in furtherance of its manifest intent, the term used, "site," must be understood in a disjunctive sense and as applying separately to the different county buildings to be constructed, and which must not be outside the town limits. The section should be read as directing the selection of a *situs* or place for the court house and a site or place, one or more, for the other public buildings embraced in it, as the public convenience may require, and this is left to the judgment of the commissioners. As they could accept and use contiguous lands or land just across the public street, so may they select a more distant lot when demanded by a due regard to the public welfare. This construction is fortified by the bestowal of all the powers possessed by other county commissioners, not restricted in the act itself. So in section 14 they are required to build a jail on the site selected for that purpose in the town and not necessarily in the court house lot. No new restraints are here imposed and it only confers *authority* to purchase the site or sites required by section 8, and to erect the houses required for the public use thereon according to their judgment.

The plaintiffs also insist upon their right to preserve the present *status* until a final hearing and adjudication of their case. To this a ready answer is suggested in the necessity of having a jail and the mandate for its construction. Delay would be a dereliction of duty, and to this the Court ought not, by its needless intervention in the controversy, to become a party.

Besides, the supposed injury, at least in its extent, is largely conjectural, as the various opinions expressed in the affidavits show, and, if entitled to relief, it can be obtained when they become facts. But our construction of the sections conferring power removes the objections arising upon the alleged want of it.

If we were at liberty to revise the discretion reposed in the commissioners in selecting the site for the jail, as we are not, the evidence largely preponderates in showing that it has been exercised wisely and in a proper regard to the interests of the property owners and residents of the town.

As we refused in *Dorsey* v. *Allen, supra,* to arrest the work commenced in the erection of a planing mill and cotton·gin because of its apprehended annoyance and increased danger of fire, upon considerations of public policy, so for stronger reasons must we refuse to arrest the action of the defendants in their discharge of a public enjoined duty. There is no error. Let this opinion be certified to the Court below, that it may proceed upon the affirmed judgment with the cause.

No error. Affirmed.