ARTHUR L. PHARR v. LINN D. GARIBALDI, CHAIRMAN, AND EDGAR GURGANUS, JAMES M. PARROTT, JR., DR. HARLEY SHANDS, DR. M. B. DAVIS, W. W. SHOPE, MRS. J. MELVILLE BROUGHTON, MEMBERS OF THE NORTH CAROLINA STATE PRISON COMMISSION, AND WILLIAM F. BAILEY, DIRECTOR OF PRISONS.

(Filed 30 June, 1960.)

1. Prisons § 1:   State § 3a—
     A suit against the members of the State Prison Commission and the Director of Prisons to enjoin the maintenance and operation of a prison and the enlargement thereof, without allegation of any unlawful conduct on the part of the individual defendants, is a suit against the

PHARR *v.* GARIBALDI.

State and may not be maintained, there being no constitutional or legislative waiver of the State's immunity to suit in such instance.

**2. Prisons § 1—**

The Director of Prisons, subject to the rules and regulations adopted by the State Prison Commission, is expressly authorized to designate where prisoners committed to his custody shall serve their sentences, and the Commission has the discretionary authority to determine whether the operation of a particular prison should be continued or enlarged, and whether such prison should be operated as a "minimum security prison". Constitution of North Carolina, Art. XI, Sections 1, 4, 5, G.S. 148-1(b), G.S. 148-1(c), G.S. 148-4, G.S. 148-6, G.S. 148-26, G.S. 148-33.1.

**3. Same: Nuisance § 1—**

The maintenance and operation of a prison, even though it be a "minimum security prison" is not a nuisance *per se*, but is a necessary governmental function and may not be enjoined in an action against the prison officials in the absence of allegation of abuse of discretion or want of good faith in the discharge of their statutory duties, or any unlawful or unauthorized conduct on their part, and in the absence of such elements, any depreciation in the market value of real estate in the vicinity of a prison is *damnum absque injuria*.

**4. Administrative Law § 3—**

The courts have no authority to interfere with the exercise of a discretionary power by a state agency or commission except in cases of manifest abuse of discretion or some unauthorized or unlawful conduct on the part of the officials in charge.

**5. Prisons § 1: Evidence § 3—**

It is a matter of common knowledge that, notwithstanding all efforts of prison authorities, prisoners do escape from maximum security prisons as well as minimum security prisons, and that escaped prisoners, as well as persons who are not prisoners, have committed crimes both in the neighborhood of prisons and elsewhere.

**6. Prisons § 1: Nuisance § 7— Maintenance of prison may not be enjoined in absence of allegation of any unauthorized or unlawful conduct on part of officials.**

Allegations to the effect that prisoners at a minimum security prison are not closely confined or guarded and actually go on the property and into the homes of residents of the area, without allegation that the prison authorities promulgated any policy or any rule permitting prisoners to roam the neighborhood at will or invade private property, or that the authorities had failed to punish such violations of its rules as did occur, or had failed to discharge or discipline subordinate employees who may have granted liberties to prisoners in violation of its policy, are insufficient basis for the abatement of the maintenance of the prison as a nuisance, and it is error for the court upon such allegations to enter an interlocutory order restraining the maintenance of the prison as a minimum security prison.

7. **Pleadings § 2—**
> Plaintiff must plead a municipal ordinance relied upon by him.

8. **Municipal Corporations § 34:   Injunctions § 4—**
> An individual may not seek to restrain the violation of a municipal zoning ordinance upon mere allegation of the conclusions that defendant's use was a violation of the ordinance and would result in irreparable injury to plaintiff, but plaintiff is required to allege the facts supporting the conclusions of defendant's violation of the ordinance and irreparable injury to plaintiff.

APPEAL by defendants from *Thompson, Special Judge,* December Special Term, 1959, of WAKE.

Civil action to enjoin (1) the maintenance and operation of Camp Polk Prison, (2) the construction of buildings for enlargement thereof, and (3) the removal of buildings heretofore constructed in violation of zoning ordinances of the City of Raleigh.

The allegations of the (amended) complaint, summarized or quoted, are as follows:

Plaintiff resides on Lake Boone Trail on property located (1) within one mile of the corporate limits of Raleigh, (2) within an area zoned for residential use, and (3) "in close proximity" to Camp Polk Prison.

Defendants, except William F. Bailey, are members of the State Prison Commission. Defendant Bailey is Director of Prisons. Their respective official duties are defined in G.S. 148-1. They maintain and operate, "in their official capacities," a prison in Wake County identified as Camp Polk Prison.

Camp Polk Prison is located northwest of Raleigh in a thickly inhabited area. There are approximately five hundred residences within a radius of one mile of said prison. Part of the Camp Polk Prison property is located within one mile of the corporate limits of Raleigh and within an area (over which the City of Raleigh has zoning authority) zoned for residential use only. A public school, LeRoy Martin Junior High School, attended by approximately 473 school children, and Meredith College, attended by approximately 750 young ladies, are "located nearby."

Camp Polk Prison "is presently inhabited by approximately 400 prisoners, and is now being expanded to provide for an additional 300 prisoners."

". . . plaintiff is informed and believes the said Camp Polk Prison is maintained and operated by the defendants as a 'minimum security prison,' that as such its inhabitants are not closely confined and are not closely guarded, that said inhabitants are given considerable freedom and that as a result thereof the prisoners roam the neighbor-

hood at will and that the said prisoners actually go onto property and to the homes of residents of the area, putting said residents in fear of their persons and even of their lives and constituting a threat to the safety of the persons and property of said residents; that escapes from the prison are numerous and frequent and that escapees and discharged inhabitants of the prison have committed serious crimes, including rape and murder, in the area; that the operation of the said prison in such a manner has created an intolerable condition, which seriously affects the residents of said area and constitutes a continuing nuisance, and unless said nuisance is abated, the residents of the said area will continue to be subjected to the said intolerable conditions and will thereby be denied the use and enjoyment of their property."

The City of Raleigh, pursuant to G.S., Chapter 160, Article 14, and Section 100 of its charter (Chapter 1184, Session Laws of 1949, as amended), adopted comprehensive zoning ordinances. Section 24-12(f) of the Raleigh City Code prohibits the erection or enlargement of a prison within a residential district.

". . . on or about 1 June 1959, after the adoption and effective date of said zoning ordinances, the defendants commenced enlargement of the Camp Polk Prison by erecting additional buildings of a nonresidential character within the said residential district, and that said buildings are now under construction, which such action is in violation of Section 24-12(f) of the City Code of Raleigh."

"Plaintiff has no plain, speedy or adequate remedy at law to prevent the acts and conduct aforesaid and such conduct renders plaintiff's premises and property undesirable, uninhabitable in peace and security, and is resulting in its diminished value, and unless the same is abated, plaintiff will suffer and is now suffering irreparable damage and loss."

Upon the foregoing allegations, plaintiff prays that defendants be "perpetually and permanently" enjoined and restrained as set forth above.

Defendants demurred, asserting as grounds therefor, in substance, the following: The complaint does not state facts sufficient to constitute a cause of action against them in that (1) the court has no jurisdiction to control the discretion of an agency of the State engaged in the performance of a governmental function, (2) the State is the real party whose action would be controlled by the injunctive relief sought, and (3) defendants are not subject to suit for the cause alleged.

The cause came on before Judge Thompson for hearing (1) on

defendants' demurrer and (2) on return of an order that defendants "show cause, if any there be, why the injunction as prayed for by the plaintiff should not be granted until the final determination of this action."

On December 15, 1959, Judge Thompson, after hearing, entered an order overruling defendants' demurrer. Defendants excepted. Thereafter, plaintiff and defendants presented affidavits relevant to the issuance of a restraining order pending final determination of the action.

On December 16, 1959, Judge Thompson entered a "Temporary Restraining Order," which, after recitals, contains these provisions:

". . . it appears to the court that there is probable proof of the maintenance of the nuisance alleged in the complaint, in that it appears, *prima facie* from the affidavits offered by the plaintiff that prisoners at the Camp Polk Prison have from time to time been allowed and permitted to be away from custodial supervision of the prison and to wander about the neighborhood in the vicinity of the prison unguarded.

"IT IS ORDERED, ADJUDGED AND DECREED, that the defendants be and each of them hereby is, until further order of the Court, enjoined and restrained from establishing and maintaining a prison policy for Camp Polk Prison allowing prisoners to be away from guarded supervision in the vicinity of the camp and to roam at will about the surrounding neighborhood; and it is further ordered and adjudged that this order and injunction remain in effect during the pendency of this action and until further order of the court."

Defendants excepted to the signing and entry of said order, specifically to the quoted portions thereof, and appealed.

On December 17, 1959, upon application of the Attorney General, counsel for defendants, the Chief Justice ordered that the execution of Judge Thompson's judgment of December 16, 1959, "be and the same is hereby stayed pending final determination of an appeal to be filed by the defendants with the Supreme Court of North Carolina."

On January 14, 1960, this Court, upon defendants' application, issued its writ of *certiorari* for review of the order of December 15, 1959, overruling defendants' demurrer to the complaint.

In this Court, defendants filed a demurrer *ore tenus* in which they set forth, summarily stated, these additional grounds of objection: (1) The facts alleged in the complaint are insufficient to show plaintiff has suffered or will suffer irreparable or special damage. (2) No

facts are alleged in the complaint that defendants have acted unlawfully or in palpable abuse of their discretion.

*Jordan, Dawkins & Toms for plaintiff, appellee.*

*Attorney General Bruton, Assistant Attorney General Moody and Giles R. Clark and Carl C. Churchill, Members of Staff, for defendants, appellants.*

BOBBITT, J. Analysis of the complaint discloses:

1. The action is solely for injunctive relief, specifically to require defendants, in their official capacities, to discontinue operation of Camp Polk Prison on the site where it has been and is now maintained.

2. Plaintiff's property is on Lake Boone Trail, within one mile of the corporate limits of Raleigh and "in close proximity" to Camp Polk Prison. A part of Camp Polk Prison is also located within one mile of the limits of Raleigh.

3. There are approximately five hundred residences within a radius of one mile of Camp Polk Prison, but there is no allegation that plaintiff's property is within this area.

4. Escapees and other prisoners, including discharged prisoners, have committed serious crimes "in the area" surrounding Camp Polk Prison, or have trespassed upon the property of residents "of the area" in such manner as to constitute a threat to the safety of such persons and their property, but it is not alleged that any such incident has occurred on plaintiff's property or in the immediate vicinity thereof or that plaintiff or any member of his household has been directly affected thereby.

5. The alleged ground for injunctive relief is the apprehension that plaintiff's safety and property is endangered by acts of escapees and other prisoners, including discharged prisoners, on property beyond the limits of Camp Polk Prison; but there is no allegation that any condition exists *within the limits of Camp Polk Prison* that constitutes an annoyance to plaintiff or adversely affects his property.

It is here noted that the decisions upon which plaintiff relies, cited below, relate to factual situations where the plaintiff owned property contiguous, in whole or in part, to the prison property, or so close as to be directly affected by conditions within the jail or prison. All, except the *Totten* case, deal with annoyances such as alleged unsanitary conditions, obscene, boisterous and disorderly conduct, invasion of privacy by exposure of the plaintiff's premises to the view, remarks and gesticulations of prisoners, *etc.*

The State Prison Department was created by G.S. 148-1(a) as

the State's agency for the performance of an essential governmental function. A suit against the State Prison Department *eo nomine* is essentially a suit against the State. Hence, absent constitutional or legislative authority therefor, plaintiff could not maintain such suit. *Moody v. State Prison*, 128 N.C. 12, 38 S.E. 131; *Schloss v. Highway Commission*, 230 N.C. 489, 53 S.E. 2d 517, and cases cited.

While a suit against State officials is not necessarily a suit against the State, "where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the officer as an individual, could operate to control the action of the state or subject it to liability," such suit "is to be deemed a suit against the state, and is not maintainable unless the state has consented to be sued." 49 Am. Jur., States, Territories, and Dependencies § 92; *Vinson v. O'Berry*, 209 N.C. 287, 183 S.E. 423. Whether a suit against State officials is a suit against the State "is to be determined by the essential nature and effect of the proceeding." *Ford Motor Co. v. Treasury Department*, 323 U.S. 459, 89 L. Ed. 389, 65 S. Ct. 347, and cases cited.

In *Schloss v. Highway Commission, supra,* Barnhill, J. (later C. J.), said: "When public officers whose duty it is to supervise and direct a State agency attempt to enforce an invalid ordinance or regulation, or invade or threaten to invade the personal or property rights of a citizen *in disregard of law,* they are not relieved from responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State." (Our italics) A statement to like effect was made by *Devin, J. (later C. J.),* in *Teer v. Jordan,* 232 N.C. 48, 59 S.E. 2d 359.

The official status of defendants, standing alone, does not immunize them from suit. Whether plaintiff can maintain this action depends upon the essential nature and effect of the proceeding, specifically whether the facts alleged, if true, are sufficient to show plaintiff's rights have been invaded or threatened *by unlawful conduct* on the part of defendants.

It is noted that, while the time, place and circumstances of such incidents are not alleged, the complaint contains general allegations as to crimes and trespasses heretofore committed "in the area." It is noted further there is no allegation as to what incidents, if any, occurred while defendants have held their alleged respective official positions. Even so, plaintiff does allege, upon information and belief, that Camp Polk Prison is maintained and operated by defendants, "in their official capacities," as a "minimum security prison" and that "its inhabitants are not closely confined and are not closely guarded" and are given "considerable freedom." .

Under the provisions of Article XI of the Constitution of North Carolina, the General Assembly has plenary authority to provide for a State Prison System. It is noted that Section 1 thereof expressly authorizes "the employment of such convict labor on public works or highways, or other labor for public benefit, and the farming out thereof, where and in such manner as may be provided by law; but no convict shall be farmed out who has been sentenced on a charge of murder, manslaughter, rape, attempt to commit rape, or arson." Sections 4 and 5 of Article XI expressly recognize that rehabilitation of a prisoner as well as punishment for past criminal conduct is a proper function of prison administration.

The State's prison policy, as defined by the General Assembly, contemplates that able-bodied prisoners shall engage in useful labor, either on the prison premises or elsewhere, G.S. 148-6, and so "reduce the cost of their keep while enabling them to acquire and retain skills and work habits needed to secure honest employment after their release," G.S. 148-26. Also, see G.S. 148-33.1 relating to prisoners granted the option of serving sentences under the "work release plan" therein authorized. The cited provisions, as well as provisions with reference to paroles, G.S. Chapter 148, Article 4, are predicated upon the idea that the ability as well as the disposition *of released prisoners* to engage in honest employment and become law-abiding members of society is calculated to serve the best interests of the State and of its citizens.

The statutory responsibility of the State Prison Commission, to be exercised at meetings held as provided, is "to formulate general prison policies, to adopt prison rules and regulations, to approve budgetary proposals of the State Prison Department, and to advise with the Director of Prisons on matters pertaining to prison administration." G.S. 148-1(b). The statutory duty of the Director of Prisons, as executive head of the Department, is to "administer the affairs of the State Prison Department subject to the duly adopted policies and rules and regulations of the Commission." G.S. 148-1(c). The Director of Prisons, subject to the rules and regulations of the Commission, is expressly authorized to designate the places of confinement within the State Prison System where prisoners committed to his custody shall serve their sentences. G.S. 148-4, as amended by Chapter 109, Session Laws of 1959.

"The erection and operation of prisons and jails, whether by the state, a county, or a municipality, is a purely governmental function, being an indispensable part of the administration of the criminal law, ... They are a part of the police system for the preservation of order

and the security of society, and are established by the state in the exercise of its sovereign powers, in performance of its duty to provide for the custody, employment, and maintenance of convicts. They are a public necessity." 41 Am. Jur., Prisons and Prisoners § 3; *Burwell v. Comrs. of Vance County*, 93 N.C. 73; *Moody v. State Prison, supra.*

"It is true that nobody would be pleased at the erection of a jail in the vicinity of his residence, but it must be built somewhere. It is a public necessity. It is authorized by law. In no sense, or rather in no legal sense, is it a nuisance. Nothing that is legal in its erection can be a nuisance *per se;* much less can that which public necessity demands be one." *Bacon v. Walker*, 77 Ga. 336.

A prison is not a nuisance *per se.* Hence, *the construction* of a prison on a site selected by public officials pursuant to statutory authority will not be enjoined. *Burwell v. Comrs. of Vance County, supra; Bacon v. Walker, supra; Hughes v. McVay*, 113 Wash. 333, 194 P. 565, 14 A.L.R. 681; *Baptist Church of Madisonville v. Webb* (Texas), 178 S.W. 689. *Smith, C. J.*, speaking for this Court in *Burwell v. Comrs. of Vance County, supra,* said: "For if they could thus have the aid of the Court, so could residents of any other part of the town, for the same and perhaps stronger reasons, because more thickly settled, as well as contiguous proprietors could prevent the erection elsewhere. The special damage in such case is incidental to what the general interest of the community requires and becomes *damnum absque injuria.* Otherwise no jail could be built within the town if parties interested as these plaintiffs choose to object."

Whether the maintenance and operation of *a* prison on the Camp Polk site shall be conducted, either as at present or as enlarged by the construction of additional buildings and facilities, is a matter for determination by the State Prison Commission in the exercise of its discretion. G.S. 148-3; G.S. 148-5. Moreover, a minimum security prison is not a nuisance *per se;* and, absent allegations that defendants are acting otherwise than in good faith in the discharge of their statutory duties, whether Camp Polk Prison shall be operated as a "minimum security prison" is likewise a matter for determination by the Commission in the exercise of its judgment and discretion.

As succinctly stated by *Devin, C. J.*, in *Williamston v. R. R.*, 236 N.C. 271, 72 S.E. 2d 609: "Courts will not undertake to control the exercise of discretion and judgment on the part of the members of a commission in performing the functions of a State agency." When discretionary authority is vested in such commission, the court has no power to substitute its discretion for that of the commission; and, in the absence of fraud, manifest abuse of discretion or conduct in ex-

cess of lawful authority, the court has no power to intervene. *Sanders v. Smithfield,* 221 N.C. 166, 19 S.E. 2d 630; *Mullen v. Louisburg,* 225 N.C. 53, 33 S.E. 2d 484, and cases cited. For a full exposition of this well established principle of law, see opinion of *Barnhill, C. J.,* in *Burton v. Reidsville,* 243 N.C. 405, 407, 90 S.E. 2d 700.

The complaint contains no allegation that defendants have acted fraudulently or in such arbitrary manner as to constitute a manifest abuse of discretion. There is no allegation that the Commission has adopted any policy, rule or regulation permitting prisoners to roam the neighborhood at will or to go onto the property or to the homes of residents in the area. Nor is there any allegation that defendants have failed in any way to use all means at their disposal to punish such violations of its rules and regulations as occur and to prevent recurrence of such violations in the future. Nor is there any allegation that defendants have failed to discipline or discharge subordinate employees who may have granted liberties to prisoners in violation of the Department's policy, rules or regulations, or who may have been negligent in the enforcement of the Department's policy, rules and regulations. It is common knowledge that, notwithstanding all efforts of the State Prison Commission and of the Director of Prisons, prisoners do escape from maximum security prisons as well as from minimum security prisons; and that escaped prisoners, as well as persons who are not prisoners, have committed crimes both in the neighborhood of prisons and elsewhere.

Since plaintiff does not allege that defendants have established and maintained or that they threaten to establish and maintain "a prison policy for Camp Polk Prison allowing prisoners to be away from guarded supervision in the vicinity of the camp and to roam at will about the surrounding neighborhood," the interlocutory order restraining defendants from establishing and maintaining such prison policy was improvidently entered and is vacated.

Plaintiff directs our attention to this statement from 41 Am. Jur., Prisons and Prisoners § 8: "Authority to erect and maintain such an institution does not carry with it authority so to manage and conduct it as to create a nuisance, and if a penal institution is maintained in such a manner as unreasonably to interfere with the comfort, use, and enjoyment of property in the neighborhood, the maintenance thereof may be restrained as a nuisance or may warrant the recovery of damages." Also, see 66 C.J.S., Nuisances § 53. All cases cited in support of these general statements are referred to herein. Indeed, the opinion in *Burwell v. Comrs. of Vance County supra,* states, by way of *dictum,* that a directly affected property owner may reasonably

require that a jail be so managed "as to occasion as little inconvenience and discomfort to those living near as is consistent with the public purposes to be subserved."

*Pritchett v. Board of Com'rs.*, 42 Ind. App. 3, 85 N.E. 32, is the only decision that has come to our attention in which it was held that plaintiff was entitled to injunctive relief. It was held that the plaintiff was entitled to relief from the nuisance of invasion of his privacy by prisoners looking into his house through open jail windows, specifically, that plaintiff was entitled to have the windows of the jail next to his residence kept closed.

In *Pritchett*, it was also held that the County Commissioners were not liable for damages on account of the way a jail was conducted, but the sheriff, who had control of the prisoners, and the jailor, who had control of the jail, may be liable. In the latter respect, *Wehn v. Commissioners of Gage County*, 5 Neb. 494, 25 Am. Rep. 497, and *City of Bowling Green v. Rogers*, 142 Ky. 558, 134 S.W. 921, 34 L.R.A. (N.S.) 461, are in accord. In this connection, see *Threadgill v. Commissioners*, 99 N.C. 352, 6 S.E. 189.

In *Dunkin v. Blust*, 83 Neb. 80, 119 N.W. 8, the court, at the instance of a taxpayer, enjoined the construction of a village jail solely on the ground the trustees of the village had not complied with statutory provisions requiring (1) publication of notice of the estimated expense and (2) appropriation of funds to defray such expense. The relevancy of this decision is not apparent.

In *Long v. Elberton*, 109 Ga. 28, 34 S.E. 333, 46 L.R.A. 428, 77 Am. St. Rep. 363, plaintiff instituted the action against City of Elberton for the recovery of damages. He alleged defendant had selected and built a "City Prison" within one hundred feet of his property, which included a hotel in which he and his family resided. He alleged defendant maintained this prison in such manner as to constitute a nuisance, alleging with particularity the offensive conditions at said prison which rendered his property less desirable and impaired its market value. A judgment, sustaining demurrer to amended complaint, was affirmed.

Plaintiff cites *District of Columbia v. Totten*, 5 F. 2d 374, 40 A.L.R. 1461, as directly in point and quotes extensively from the opinion. In substance, Totten alleged, and offered evidence tending to establish, these facts: Totten owned a tract of land in Fairfax County, Virginia. The District of Columbia, referred to in the opinion as a municipal corporation, acquired "a neighboring and partly contiguous tract of land" in Fairfax County, Virginia, and commenced con-

struction of permanent structures and buildings thereon for use as a workhouse and prison. This construction work was done by prison labor. Prisoners so engaged and other prisoners were insufficiently guarded, frequently escaped and as escapees or prisoners overran the community, specifically the premises of Totten, terrorizing the residents to such extent that Totten and his family were compelled to abandon their home and live elsewhere. A judgment in favor of Totten against the District of Columbia, in accordance with verdict, was affirmed by the District of Columbia Court of Appeals (a three-judge court), Chief Justice Martin dissenting.

It appears that Totten's recovery was for damages he sustained *"on account of his being deprived of the enjoyment of the use of his premises,* on account of a nuisance maintained by the defendant in the manner in which it attempted to perform the function of keeping prisoners and using prison labor to build the prison in which to keep them." (Our italics) Whether Totten was entitled to injunctive relief was not involved or discussed. As to the right to recover damages, the *Totten* case appears to be in conflict with decisions heretofore cited unless a distinction is drawn from the fact that the District of Columbia had constructed and operated a prison outside of its own territorial limits.

Plaintiff does not attempt to allege a cause of action for damages against the defendants as individuals. In this connection, see *Smith v. Hefner,* 235 N.C. 1, 7, 68 S.E. 2d 783, and cases cited. Nor does he attempt to allege a cause of action for damages against the State. Rather, he asks the court to require the defendants to do what must be done, if at all, in the exercise of their discretionary authority as public officials. Obviously, defendants, as individuals, have no authority with reference to the maintenance of the State Prison System.

The Commission, in the exercise of its official duties, is the State agency empowered by the General Assembly to perform an essential governmental function. If it cannot maintain Camp Polk Prison at its present location, the State itself cannot do so. Hence, plaintiff's action, in its essential nature and effect, is an action against the State. The facts alleged are insufficient to entitle plaintiff to maintain such action.

We have not overlooked plaintiff's allegations that the present site of Camp Polk Prison is in an area restricted to residential use by zoning ordinances of the City of Raleigh. Too, we are advertent to the fact that the demurrers do not specifically assert a failure of plaintiff to allege a cause of action in this respect. Obviously, this was

considered a secondary phase of the case. Indeed, plaintiff submitted no argument bearing thereon.

Plaintiff pleaded, by general reference, the charter of the City of Raleigh, and Chapter 160, Article 14, of the General Statutes. In respect of zoning, these are enabling acts. Also, plaintiff pleads, by specific reference, "Section 24-12(f) of the City Code of Raleigh," ostensibly a provision of a zoning ordinance; but plaintiff does not plead, by reference or otherwise, any ordinance provision purporting to restrict to residential use the area in which Camp Polk Prison is located. Where a plaintiff bases his right of action on the provisions of a city ordinance, such ordinance must be pleaded. G.S. 160-272; *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 343, 88 S.E. 2d 333.

Moreover, the facts alleged as to the location of plaintiff's property are insufficient to show he is entitled to relief on the ground that the operation and maintenance of Camp Polk Prison is *a nonconforming use* in violation of a city ordinance. *Shelby v. Lackey,* 236 N.C. 369, 72 S.E. 2d 757; *Harrington & Co. v. Renner,* 236 N.C. 321, 327, 72 S.E. 2d 838; *Goldsboro v. Supply Co.,* 200 N.C. 405, 157 S.E. 58. "It is not enough for the plaintiff to allege simply that the commission or continuance of the act will cause him injury, or serious injury, or irreparable injury; but he should allege the facts, from which the court may determine whether or not such injury will result." McIntosh, North Carolina Practice and Procedure, § 853(2); *Bogey v. Shute,* 54 N.C. 180; *Lewis v. Lumber Co.,* 99 N.C. 11, 5 S.E. 19; *Porter v. Armstrong,* 132 N.C. 66, 43 S.E. 542.

We are constrained to hold that plaintiff's allegations as to alleged violations of zoning ordinances and as to alleged irreparable injury are legal conclusions and that plaintiff's factual allegations are insufficient to state a cause of action on this ground.

Under the circumstances set forth, this Court sustains defendants' demurrers. Hence, the order of December 15, 1959, overruling defendants' original demurrer, is reversed and vacated.

Reversed.