GRANVILLE COUNTY BOARD OF COMMISSIONERS v. NORTH CAROLINA HAZARDOUS WASTE MANAGEMENT COMMISSION

No. 478PA90

(Filed 14 August 1991)

1. **Appeal and Error § 173 (NCI4th)— siting of hazardous waste facility—injunction prohibiting—appeal moot**

    An appeal from a preliminary injunction enjoining the Hazardous Waste Commission from taking further action with respect to siting a hazardous waste facility at a site in Granville County was moot where the site had since been downgraded and was no longer considered a suitable site, and the State had since been expelled from the regional agreement which had established a mandatory schedule of milestone dates for North Carolina to establish a hazardous waste treatment facility.

    **Am Jur 2d, Appeal and Error §§ 761-763.**

2. **Administrative Law § 52 (NCI4th)— siting of hazardous waste facility—preliminary injunction—no justiciable issue**

    The trial court erred in entering an order enjoining the Hazardous Waste Commission from further efforts in its investigation and site selection process with regard to a Gran-

GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.

[329 N.C. 615 (1991)]

ville County site because there is no justiciable issue and no genuine controversy between the parties unless and until the Commission makes a final site selection decision. The issuance of the preliminary injunction at the very first step in the administrative decision making process interfered with the exercise of discretion and judgment on the part of an important administrative agency in performing a function mandated by the legislature; in matters of this nature, which seek solutions to extremely urgent problems where the solutions are essential to protect the public health and safety, the courts should be reluctant to interfere until the administrative decision has been finalized.

**Am Jur 2d, Administrative Law § 583.**

Justice MITCHELL did not participate in the consideration or decision of this case.

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of an order of *Hobgood (Robert H.), J.*, entered 19 June 1990 preliminarily enjoining the defendant Commission from taking further action with respect to siting a hazardous waste facility at the Henderson 8 site in GRANVILLE County. Heard in the Supreme Court 6 May 1991.

*Tharrington, Smith & Hargrove, by Michael Crowell, and Watkins, Finch & Hopper, by William L. Hopper, for plaintiff-appellee.*

*Lacy H. Thornburg, Attorney General, by Edwin M. Speas, Senior Deputy Attorney General, Tiare B. Smiley, Special Deputy Attorney General, and Yvonne C. Bailey, Associate Attorney General, for defendant-appellant.*

MEYER, Justice.

The North Carolina Hazardous Waste Management Commission (hereinafter "the Commission") is a state agency created by the General Assembly with powers defined in N.C.G.S. § 130B-7, including, *inter alia*, the power to site, design, finance, construct, and operate authorized hazardous waste facilities. N.C.G.S. § 130B-6 (1989). The Granville County Board of Commissioners (hereinafter "the County"), on 11 June 1990, initiated this action against the Commission seeking a temporary restraining order and a preliminary

and a permanent injunction to enjoin the Commission from siting a hazardous waste treatment facility on a parcel of land in Granville County referred to as the "Henderson 8" site, which the Commission had preliminarily identified as one of two "suitable" sites for further evaluation pursuant to N.C.G.S. § 130B-11. The County's demand for injunctive relief and its request for a declaratory judgment contained in its complaint were premised on allegations that the Commission had violated N.C.G.S. § 130A-294(c)(8), (h)(4), and (h)(5) and its own administrative rules, 4 NCAC 18 .0200, which prohibit the Commission from siting a hazardous waste facility within twenty-five miles of a polychlorinated biphenyl (PCB) landfill facility.

An *ex parte* temporary restraining order was issued by Judge Hobgood on 11 June 1990. However, the Commission filed a motion to dissolve the temporary order, and it was dissolved by Judge Hobgood on 14 June 1990.

A hearing on the County's motion for preliminary injunction was held on 18 and 19 June 1990. Upon the conclusion of the evidence and arguments of counsel, Judge Hobgood entered a preliminary injunction in open court on 19 June 1990, which was subsequently reduced to writing and filed 5 July 1990. The injunction prohibits the Commission, its servants, agents, commission members, and proposed site operator from taking any further actions, including entry onto the land, with respect to the siting of a hazardous waste facility at the Henderson 8 location in Granville County.

The preliminary injunction was based on the trial court's determination that the SARA Capacity Assurance Regional Agreement (hereinafter "the Regional Agreement") regarding the disposal and management of hazardous waste entered into by Governor James G. Martin and the governors of the States of Alabama, Kentucky, South Carolina, and Tennessee, which was approved and codified by the General Assembly at N.C.G.S. § 130B-24, violates article I, section 6 of the North Carolina Constitution. The constitutionality of the Regional Agreement had not been argued by the parties in any pleading or argument but was raised *ex mero motu* by the trial court, citing its inherent authority.

In the order, the trial court certified that "this ruling concerns a substantial right, a constitutional ruling on separation of powers by a State trial court, and is immediately appealable." On 21 June

1990, the Commission filed with the Court of Appeals a petition for writ of supersedeas under Rule 23 and a motion for temporary stay; a temporary stay was entered by the Court of Appeals. On 5 July 1990, the Court of Appeals issued an order dissolving the temporary stay and dismissing the Commission's petition for supersedeas. The Commission filed written notice of appeal to the Court of Appeals on 9 July 1990 and a renewed petition for writ of supersedeas under Rule 23 and alternative petition for writ of certiorari on 10 July 1990. On 27 July 1990, the Court of Appeals allowed the Commission's petition for writ of supersedeas and stayed the trial court's preliminary injunction pending disposition of the appeal. The alternative petition for writ of certiorari was referred to the panel to which the case was assigned. A petition for writ of supersedeas filed by the County with this Court (originally case number 395P90) was denied 31 August 1990, and a petition for writ of certiorari to review the order of the Court of Appeals was denied 25 September 1990. A petition for discretionary review prior to determination by the Court of Appeals, filed by the Commission, was allowed by this Court on 10 January 1991. We conclude that the case is now moot, and we vacate the preliminary injunction and dismiss the action. However, in the public interest, we proceed to address the question of whether there was a justiciable issue before the trial court and conclude that there was not.

I.

Recognizing the inadequacy of facilities for the disposal of hazardous waste in the state and the consequences of the failure to have adequate facilities for that purpose, the General Assembly, after lengthy studies, enacted the North Carolina Hazardous Waste Management Commission Act of 1989 (hereinafter "the Act") on 30 May 1989. The ·Act is codified in chapter 130B of the North Carolina General Statutes. Among the legislative findings appearing in the Act itself are that "the safe management of hazardous waste, and particularly the *timely establishment of adequate facilities* for the treatment and disposal of hazardous waste, is one of the *most urgent problems* facing North Carolina"; that "[t]he safe management of hazardous waste is *essential to protect public health and safety and the environment* and to continued economic growth"; and that "the most practical approach to hazardous waste management . . . is through a regional approach." N.C.G.S. § 130B-3 (1989) (emphasis added).

GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.

[329 N.C. 615 (1991)]

The General Assembly created the Commission and charged it with achieving the following purposes:

> It is the purpose of this Chapter to provide for the siting, construction, and operation of hazardous waste facilities to the end that hazardous waste may be treated or disposed of in the most cost-effective manner, while protecting public health and safety and the environment. It is the purpose of this Chapter to promote a regional approach to hazardous waste management. It is the purpose of this Chapter to provide a mechanism to assess the need for hazardous waste treatment and disposal in this State and in the region, to determine the scope and capacity of hazardous waste facilities needed in this State in order that North Carolina is in a position to assume its fair share in the management of hazardous waste so that the benefits and burdens of hazardous waste management are equitably shared by all states, and to cause to come into existence such facilities as are needed. It is the purpose of this Chapter to promote interstate agreements for the management of hazardous waste which will assure access to hazardous waste facilities on a regional basis. It is the purpose of this Chapter to encourage the development of hazardous waste facilities which are needed in this State through the efforts of private enterprise. It is the purpose of this Chapter to create a commission to assist private enterprise with the development of needed hazardous waste facilities through the performance of those tasks which private enterprise is unable to undertake or accomplish. It is the purpose of this Chapter to authorize the Commission, when authorized by the Governor, to site, design, finance, construct, operate, oversee, acquire, hold, sell, lease, or convey needed hazardous waste facilities to the extent that private enterprise fails to provide such facilities.

N.C.G.S. § 130B-4 para. 1 (1989).

North Carolina joined the SARA Capacity Assurance Regional Agreement previously entered into by Alabama, Kentucky, South Carolina, and Tennessee. The Governor signed the Regional Agreement on 8 November 1989, and a special session of the General Assembly ratified this action and incorporated the Regional Agreement into the General Statutes on 7 December 1989. N.C.G.S. § 130B-24 (Cum. Supp. 1990).

GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.

[329 N.C. 615 (1991)]

The Regional Agreement requires North Carolina to construct and operate a hazardous waste treatment facility consisting of an incinerator and thermal treatment unit, a solvent distillation and recovery unit, and a residuals management unit. The Regional Agreement establishes a milestone schedule for the siting, construction, and operation of this facility. These milestones are:

| | |
|---|---|
| Site Selection | May 1990 |
| Part B Permit Submitted | December 1990 |
| Part B Permit Issued and Construction Begun With No Adverse Litigation Pending | July 1991 |
| Facility Operational | December 1991 |

The Regional Agreement provides that "[i]f at any time North Carolina is unable to meet the milestone dates set forth in the attached tables, North Carolina will be eliminated automatically from the agreement."

The Commission began its work by adopting regulations consistent with statutory obligations and requirements for the siting of a facility. These regulations and other Commission actions embody a comprehensive and orderly site selection process to determine suitable sites. The entire state was considered in the site selection process. Through the application of the criteria established by law to geological and other data obtained from state and federal agencies, the Commission ultimately identified eighteen sites for further study. Based upon further consideration, the Commission determined, on 1 May 1990, that two sites warranted on-site evaluation: a site in Rowan and Iredell Counties and a site in Granville County (Henderson 8). The Commission was also giving further consideration to state-owned property.

The Commission was about to begin the on-site evaluation process when this action was filed on 11 June 1990. In addition to the instant litigation, a whole series of lawsuits was filed against the Commission in superior and district courts which resulted in temporary restraining orders and preliminary injunctions attempting to prevent the Commission from doing on-site testing, holding public meetings, or taking other necessary actions to select a preferred site.

**GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.**

[329 N.C. 615 (1991)]

After the original briefs were filed in this case, the Commission filed a supplemental statement of facts and suggested that the issues presented by the case were now moot. This Court directed the parties to brief the mootness issue. After thoroughly reviewing the record on appeal, the briefs, the supplemental briefs, and the arguments of counsel, we conclude that the case is indeed moot, and we address that question at the outset.

[1] Since this litigation was initiated in June 1990, a number of significant events have occurred which render the case moot. When the petition for discretionary review was filed with this Court, the Commission was seeking to meet the mandate of a five-state Regional Agreement to find a site for a hazardous waste facility and have a permit application submitted by the end of 1990. The Henderson 8 site was one of two privately owned parcels identified by the Commission as finalists for the facility; however, the trial court had preliminarily enjoined further consideration of this site because the Regional Agreement violated the separation of powers provisions of the state Constitution. In its petition for discretionary review, the Commission argued that the upcoming milestone date, the importance of the Regional Agreement, and the potential application of the trial court's constitutional decision to other cases justified this Court's intervention.

On 2 October 1990, some months after this lawsuit was initiated, the Commission adopted a resolution downgrading Henderson 8 and the Rowan-Iredell site from their status as "suitable" sites and placing them back in the status of "potentially acceptable/high priority" along with sixteen other sites. In this same resolution, the Commission selected the Umstead State Farm Unit in Granville County as a "suitable" site and indicated its intent to focus on state-owned land.

On 4 December 1990, the Commission selected the Umstead Farm site as the "preferred" site pursuant to N.C.G.S. § 130B-11. However, in order to obtain fee simple title to the land as required by N.C.G.S. § 130B-11(e), the Commission was required by N.C.G.S. §§ 146-28 and -29 to obtain fee simple title from the Council of State. On 13 December 1990, the Council of State declined to transfer fee simple title of the Umstead Farm to the Commission.

Based on these circumstances, the Commission again filed a motion to dismiss this and all of the other site selection cases pending before Judge Battle on the basis of nonjusticiability. Rather

than making a decision on the motion, which was opposed by all plaintiffs, Judge Battle entered an order that removed this case and all of the other cases from all active and ready calendars and closed the case files.

In addition to halting further action by the Commission to evaluate its preferred site and to begin preparing the required environmental permit applications, the decision by the Council of State also affected the state's compliance with the Regional Agreement. The Regional Agreement, which is the basis of the preliminary injunction in this appeal, expressly provided that "[i]f at any time North Carolina is unable to meet the milestone dates set forth in the attached tables, North Carolina will be eliminated automatically from the agreement." The December 1990 milestone date required the Commission to submit its Part B environmental permit application for the proposed facility by December 1990. The Commission failed to meet that deadline, and on 17 December 1990, South Carolina Governor Campbell informed Governor Martin that North Carolina would soon be eliminated from the agreement and that South Carolina would ban hazardous waste coming from North Carolina. On 4 January 1991, Governor Campbell informed President George Bush that North Carolina had been automatically eliminated from the agreement. Thus, North Carolina has been expelled from the Regional Agreement. Since the expulsion, the General Assembly has taken no action.

> When, pending an appeal to this Court, a development occurs, by reason of which the questions originally in controversy between the parties are no longer at issue, the appeal will be dismissed for the reason that this Court will not entertain or proceed with a cause merely to determine abstract propositions of law or to determine which party should rightly have won in the lower court.

*Parent-Teacher Assoc. v. Bd. of Education*, 275 N.C. 675, 679, 170 S.E.2d 473, 476 (1969). Because the Henderson 8 site has been downgraded and is no longer considered a "suitable" site and the state has been expelled from the Regional Agreement, we conclude that the case is now moot.

We therefore will vacate the order of Hobgood, J., entered 19 June 1990, preliminarily enjoining the Commission from taking further action with respect to siting a hazardous waste facility at the Henderson 8 site in Granville County, and dismiss the case.

**GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.**

[329 N.C. 615 (1991)]

## II.

While the General Assembly found that the most practical approach to meeting the state's hazardous waste management needs was through a regional approach, it charged the Commission with the responsibility to site and construct authorized hazardous waste facilities regardless of the existence of a Regional Agreement. N.C.G.S. § 130B-7 (1989). The Commission remains under a continuing obligation to carry out the statutory mandate of chapter 130B of the General Statutes to site, construct, and operate authorized hazardous waste facilities. Although it evades review in this particular case because of the mootness doctrine, this appeal raises one issue which is important to the Commission, and to the State and its people. "Even if moot, . . . this Court may, if it chooses, consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution." *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989); *see also Leak v. High Point City Council*, 25 N.C. App. 394, 213 S.E.2d 386 (1975). Because the process of siting hazardous waste facilities involves the public interest and deserves prompt resolution in view of its general importance, we elect to address it.

[2] In this and other similar cases where the issue was addressed, the Commission has raised the question of the jurisdiction of the lower court to intervene in the middle of an administrative decision-making process and to enjoin a state agency from taking the steps necessary to reach a final decision on the selection of a site for a hazardous waste facility. The Commission argues that the courts should not become prematurely involved in the administrative process and interfere in a decision-making process by the Commission which has not yet culminated in a final agency decision. Because of the multi-step decision-making process under which the Commission is operating, it is important that this Court give guidance to the lower courts as to their proper and timely role. We now, therefore, address the issue.

Under chapter 130B of the General Statutes and the Commission's rules and regulations, site selection is a three-step process. A final site selection decision cannot be made by the Commission until a site is formally designated as a "suitable" site, then as a "preferred" site, and then it is "permitted" by the various federal and state environmental regulatory agencies. Each of these steps involves an additional, stringent evaluation of the proposed site

and the accumulation of increasingly specific geological and other information about the site. All stages of the process require public hearings, and an environmental impact statement must be prepared as part of the permitting process. Until a permit is issued, the Commission cannot make its final site selection decision.

This litigation was commenced at the very first stage of the Commission's administrative decision-making process, upon its selection of two "suitable" sites which were to receive additional site-specific geological evaluation. As of the date this action was commenced on 11 June 1990, the Commission had made no final determination of a location for the waste management facility. Several additional steps remained before the Commission could finally choose a site, condemn property, and begin construction. The steps preliminary to final site selection primarily consisted of the on-site evaluation of Henderson 8, the Rowan-Iredell site, and state-owned property to determine if those sites are in fact suitable; the selection of a preferred and alternate site; and the submission of permit applications for construction and operation to state and federal environmental agencies. These additional steps would have likely required many months, and may or may not have resulted in final selection of Henderson 8.

The issuance of the preliminary injunction in the case at bar at the very first step in the administrative decision-making process interfered with the exercise of discretion and judgment on the part of an important administrative agency in performing a function mandated by the legislature, that being the evaluation and selection of a final site for a hazardous waste facility.

Our legislature has determined that the management of hazardous waste is *essential* to protect the public health, safety, and environment and that the *timely* establishment of a hazardous waste facility is one of the *most urgent* problems facing North Carolina. N.C.G.S. § 130B-3 (1989). In matters of this nature which seek solutions to extremely urgent problems, where the solutions are essential to protect the public health and safety, the courts should be reluctant to interfere until the administrative decision has been finalized. Here, as we have previously noted, a final site selection decision cannot be made by the Commission until a permit is issued. In order to issue a permit, the site must first be formally designated as a "suitable" site, then as a "preferred" site, and then it is "permitted" by the various federal and state environmental

GRANVILLE CO. BD. OF COMRS. v. N.C. HAZ. WASTE MGMT. COMM.

[329 N.C. 615 (1991)]

regulatory agencies after extensive public hearings and the preparation of an environmental impact statement.

In *Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E.2d 18 (1960), this Court observed:

> As succinctly stated by *Devin, C. J.*, in *Williamston v. R. R.*, 236 N.C. 271, 72 S.E. 2d 609 [1952]: "Courts will not undertake to control the exercise of discretion and judgment on the part of the members of a commission in performing the functions of a State agency." When discretionary authority is vested in such commission, the court has no power to substitute its discretion for that of the commission; and, in the absence of fraud, manifest abuse of discretion or conduct in excess of lawful authority, the court has no power to intervene. *Sanders v. Smithfield*, 221 N.C. 166, 19 S.E. 2d 630 [1942]; *Mullen v. Louisburg*, 225 N.C. 53, 33 S.E. 2d 484 [1945], and cases cited. For a full exposition of this well established principle of law, see opinion of *Barnhill, C. J.*, in *Burton v. Reidsville*, 243 N.C. 405, 407, 90 S.E. 2d 700 [1956].

*Id.* at 811-12, 115 S.E.2d at 24-25; *see also Elmore v. Lanier*, 270 N.C. 674, 678, 155 S.E.2d 114, 116 (1967) ("To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies."); *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 387, 265 S.E.2d 890, 914 (if federal approval for location of highway is not obtained, challenge to location "must be dismissed for want of ripeness"), *disc. rev. denied*, 301 N.C. 94 (1980).

Unless and until the Commission makes a final site selection decision, there is no justiciable issue and no genuine controversy between the parties. "When no genuine controversy presently exists between the parties," the courts cannot and should not intervene. *Angell v. City of Raleigh*, 267 N.C. 387, 391, 148 S.E.2d 233, 236 (1966); *see also Gaston Board of Realtors v. Harrison*, 311 N.C. 230, 234-35, 316 S.E.2d 59, 62 (1984). The rule applies with special force to prevent the premature litigation of constitutional issues. *City of Greensboro v. Wall*, 247 N.C. 516, 520, 101 S.E.2d 413, 416-17 (1958).

We conclude that the Hazardous Waste Management Commission may not be preliminarily enjoined in its process of site selec-

tion until the permitting process has been completed and the final site selection has been made. We thus conclude that, at the time the preliminary injunction was issued in this case, there was no justiciable issue, and the complaint failed to state a claim. The trial court erred in entering the order of 19 June 1990 enjoining the Commission, its members, servants, and proposed site operator from conducting further efforts in its investigation and site selection process with regard to the Henderson 8 site. Said order is vacated, and this action, being moot, is hereby dismissed.

Vacated and dismissed.

Justice MITCHELL did not participate in the consideration or decision of this case.