RICHMOND COUNTY v. THE NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY, A BODY CORPORATE, AND CHEM-NUCLEAR SYSTEMS, INC.

CHATHAM COUNTY AND WAKE COUNTY v. THE NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

RICHMOND COUNTY v. NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

CHATHAM COUNTY AND WAKE COUNTY v. NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

Nos. 9120SC1231
9115SC1239
9220SC158
9215SC159

(Filed 2 February 1993)

1. **Administrative Law and Procedure § 52 (NCI4th) — low-level radioactive waste — selection of disposal site — no final agency decision — no justiciable controversy**

Where plaintiffs sought declaratory and injunctive relief regarding the selection and testing of potential sites for a disposal facility for low-level radioactive waste, the trial court properly dismissed claims based on failure to comply with applicable state law, flawed process of site selection, and violation of due process, since these actions were commenced when the selection process had been narrowed to two sites; no final decision had been made; and in matters of this nature which seek solutions to extremely urgent problems, where the solu-

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

tions are essential to protect the public health and safety, the court should be reluctant to interfere until the administrative decision has been finalized.

**Am Jur 2d, Administrative Law §§ 583-594.**

**What constitutes agency "action," "order," "decision," "final order," "final decision," or the like, within the meaning of federal statutes authorizing judicial review of administrative action—Supreme Court cases. 47 L. Ed. 2d 843.**

2. **Appeal and Error § 175 (NCI4th)— necessity for environmental impact statement prior to "characterization" of land—moot issue—"characterization" substantially complete**

Whether defendants were required to prepare an environmental impact statement prior to the characterization of potential sites for a low-level radioactive waste disposal facility was a moot issue, since, at the time of oral argument, both parties informed the Court that characterization of both sites had been proceeding for a substantial period of time and was virtually complete.

**Am Jur 2d, Pollution Control §§ 46-49.**

Judge COZORT dissenting in part and concurring in part.

Appeal by plaintiffs Richmond, Chatham, and Wake Counties and defendants North Carolina Low-Level Radioactive Waste Management Authority and Chem-Nuclear Systems, Inc. from orders entered in open court on 2 May 1991 and 5 September 1991 in Richmond County Superior Court and Chatham County Superior Court (sitting by agreement of the parties in Chatham County) by Judge James M. Long. Heard in the Court of Appeals 1 December 1992.

*James, McElroy & Diehl, P.A., by Gary S. Hemric, Mark T. Calloway, and John S. Arrowood, for plaintiff-appellant/appellee Richmond County.*

*Tharrington, Smith & Hargrove, by J. David Farren, Michael Crowell, Douglas A. Ruley, Gunn & Messick, by Robert L. Gunn, for plaintiff-appellant/appellee Chatham County.*

*Wake County Attorneys Office, by Michael Ferrell and Corrine Russell, for plaintiff-appellant/appellee Wake County.*

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Terry Richard Kane, Smith Helms Mulliss & Moore, by Richard W. Ellis, Gary R. Govert, and Mathew W. Sawchak, for defendant-appellant/appellee North Carolina Low-Level Radioactive Waste Management Authority.*

*Moore & Van Allen, by Charles D. Case and David E. Fox, for defendant-appellant/appellee Chem-Nuclear Systems, Inc.*

GREENE, Judge.

Plaintiffs in these consolidated cases, *see* N.C.R. App. P. 40 (1992) (Court on its own initiative may consolidate cases which involve common questions of law), appeal from orders dismissing all but one of plaintiffs' claims. Defendants, upon this Court's grant of defendants' petition for writ of certiorari, appeal from interlocutory orders denying defendants' motion to dismiss plaintiffs' remaining claim on the ground that it fails to state a claim upon which relief can be granted, N.C.G.S. § 1A-1, Rule 12(b)(6) (1990), and on ripeness grounds.

In 1987, the North Carolina General Assembly determined that "the generation of low-level radioactive waste is an unavoidable result of the needs and demands of a modern society." N.C.G.S. § 104G-3 (1989). The General Assembly further found that

> the safe and efficient management of low-level radioactive waste, including the timely establishment of adequate facilities for the comprehensive management and permanent disposal of low-level radioactive waste, presents urgent problems for North Carolina; and that solutions to these problems are essential to the State's continued economic growth and to protection of the public health and safety and the environment.

*Id.* Prompted by these findings, the General Assembly enacted the North Carolina Low-Level Radioactive Waste Management Authority Act, N.C.G.S. § 104G-1 *et seq.*, establishing the North Carolina Low-Level Radioactive Waste Management Authority (the Authority) and mandating that it site, design, construct, and operate a safe and efficient low-level radioactive waste disposal facility somewhere within the State. The operation of such a facility for twenty years or until thirty-two million cubic feet of waste has been received for storage will fulfill North Carolina's obligation,

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

as a member of the eight-member Southeast Interstate Low-Level Radioactive Waste Management Compact, of serving as a "host state."

In late November, 1988, the Authority, along with contractor Ebasco Services, Inc., designated 116 potential suitable site areas for the facility. In March, 1989, this list of candidate areas was narrowed to approximately 3.2 million acres located in seventy counties in North Carolina. In late July, 1989, a second contractor, Chem-Nuclear Systems, Inc. (Chem-Nuclear) began its part of the site selection activities. On 8 November 1989, Chem-Nuclear recommended, and the Authority agreed, that areas in Union, Rowan, Richmond, and Wake/Chatham Counties be designated as the four favorable sites for precharacterization studies. "Characterization" is a lengthy environmental study intended to determine, among other things, whether a particular site is suitable for a low-level radioactive waste disposal facility.

From mid-December, 1989, to 1 February 1990, Chem-Nuclear performed precharacterization studies of the four site areas, and on 21 February 1990 recommended that the sites in Richmond and Wake/Chatham Counties be designated for characterization. After eliminating from consideration the Union and Rowan County sites based on Chem-Nuclear's representation that large portions of those sites had shallow ground water, the Authority selected the Richmond and Wake/Chatham County sites for characterization.

On 27 February 1990, Richmond County filed a complaint against the Authority. In its complaint, Richmond County alleged that the Authority, working with Chem-Nuclear, had failed to comply with applicable law in its evaluation of potential suitable sites for placement of a low-level radioactive waste disposal facility. On 6 June 1990, Richmond County filed an amended complaint adding Chem-Nuclear as a defendant. In Count I of its amended complaint, Richmond County alleged a failure by defendants to comply with the provisions of Chapter 104G with regard to the site selection process, and that such failure constituted a violation of North Carolina law and procedural due process. Richmond County sought preliminary and permanent injunctive relief against defendants to stop the violations of law, and a declaratory judgment that the provisions of Chapter 104G were being disregarded. Count II of Richmond County's complaint alleged that the process of site selection as it had been undertaken by defendants was flawed, primarily due

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

to defendants' reliance upon incorrect, incomplete, or outdated information, and because of substantive errors in the precharacterization report. Count III of Richmond County's amended complaint alleged that an environmental impact statement (EIS) is required by North Carolina law prior to the performance of the characterization study, and requested the prohibition of all characterization activity at the Richmond County site.

On 31 October 1990, Chatham County filed an action against the Authority, alleging in Counts I and III of its complaint claims similar to those alleged in Counts I and III of Richmond County's complaint. In Count II of its complaint, Chatham County alleged that the Authority's vice-chairman, Dr. Constance Walker, had failed to disclose that her husband owned stock in the grandparent company of Chem-Nuclear and in various low-level radioactive waste generators which would use the proposed facility. According to Chatham County, Dr. Walker's actions evidenced a bias on her part which infected the selection process and violated the county's due process rights. On 31 December 1990, Richmond County amended its amended complaint in order to allege in Count IV a claim similar to that alleged in Count II of Chatham County's complaint.

Defendants filed various motions to dismiss the claims of all plaintiffs. On 14 February 1991, the trial court signed an order denying defendants' motions to dismiss the Richmond and Chatham County actions, which motions were based on the plaintiffs' alleged lack of standing. On 16 August 1991, defendants filed a joint motion to dismiss the Richmond County and Chatham County actions, asserting that the lawsuits were nonjusticiable and therefore the court lacked subject matter jurisdiction under N.C.R. Civ. P. 12(b)(1), and that plaintiffs' complaints failed to state a claim upon which relief can be granted under N.C.R. Civ. P. 12(b)(6). On 4 September 1991, the trial court granted a motion made by Wake County pursuant to N.C.R. Civ. P. 24 to intervene as a plaintiff in the Chatham County action.

After hearing on defendants' joint motion to dismiss, the trial court, in its Chatham/Wake County order, granted defendants' motion to dismiss Counts I and II of plaintiffs' complaint (i.e., the state law claim and the Constance Walker due process claim) on the ground that such claims "are premature and nonjusticiable because no genuine controversy exists until a final site is selected for the construction of a low level radioactive waste disposal facili-

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

ty." In its Richmond County order, the trial court granted defendants' motion to dismiss Counts I, II, and IV (i.e., the state law claim, the flawed information claim, and the Constance Walker due process claim) on the same grounds. In both orders, the trial court refused to grant defendants' motion to dismiss plaintiffs' Count III (the EIS claim), finding in both cases that the claim "is not premature and that it states a justiciable controversy." Plaintiffs appeal from the dismissal of their respective claims. Defendants appeal from the denial of their motion to dismiss plaintiffs' EIS claim.

---

*PLAINTIFFS' APPEALS*

The dispositive issue in plaintiffs' appeals is whether the claims dismissed by the trial court are justiciable. After thorough consideration of the records, briefs, reply briefs, memoranda of additional authority, and oral arguments of the parties, we conclude that the resolution of plaintiffs' appeals is controlled by *Granville County Board of Commissioners v. North Carolina Hazardous Waste Management Commission*, 329 N.C. 615, 407 S.E.2d 785 (1991), and affirm the trial court's dismissal of plaintiffs' claims on the ground that such claims do not present justiciable issues and no genuine controversy exists between the parties.

*Granville County* involved an action by the Granville County Board of Commissioners seeking a temporary restraining order and a preliminary and a permanent injunction to enjoin the North Carolina Hazardous Waste Commission (the Commission) from conducting further testing of, and siting a hazardous waste treatment facility on, a parcel of land in Granville County known as the "Henderson 8" site. The Commission had selected Granville County, pursuant to its authority established in Chapter 130B of the North Carolina General Statutes, as one of two "suitable" sites for further evaluation. At the time the action was commenced, the Commission had selected two suitable sites which were to receive additional site-specific geological evaluation. The Commission had made no final decision regarding a location for the facility, and additional steps may or may not have resulted in the selection of the Henderson 8 site. Granville County alleged in its complaint that the Commission had violated various statutory provisions and its own administrative rules in selecting Granville County as a suitable site.

The trial court entered a preliminary injunction prohibiting the Commission from taking any further action, including entry

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

onto the land, with regard to the siting of a hazardous waste facility at the Henderson 8 location. The court based its injunction on the court's determination that a regional agreement regarding the disposal and management of hazardous waste, of which North Carolina was a member, violated Article 1, Section 6 of the North Carolina Constitution. The North Carolina Supreme Court granted the Commission's petition for discretionary review.

The Supreme Court determined that the case was moot due to a number of significant events which had occurred after the initiation of the litigation, primarily, the Commission's downgrading of the Henderson 8 site from a "suitable" site to one of sixteen "potentially acceptable/high priority" sites and the expulsion of North Carolina from the regional agreement for failure to meet a required deadline. Nevertheless, the Court chose to address as "a matter of public interest . . . deserv[ing] prompt resolution" the issue of our courts becoming "prematurely involved in the administrative process and interfer[ing] in a decision-making process by the Commission which has not yet culminated in a final agency decision." *Granville County*, 329 N.C. at 623, 407 S.E.2d at 789-90. The Court determined that the trial court's issuance of the preliminary injunction "interfered with the exercise of discretion and judgment on the part of an important administrative agency in performing a function mandated by the legislature, that being the evaluation and selection of a final site for a hazardous waste facility." *Id.* at 624, 407 S.E.2d at 790. Further, it recognized that

> [o]ur legislature has determined that the management of hazardous waste is *essential* to protect the public health, safety, and environment and that the *timely* establishment of a hazardous waste facility is one of the *most urgent* problems facing North Carolina. In matters of this nature which seek solutions to extremely urgent problems, where the solutions are essential to protect the public health and safety, the courts should be reluctant to interfere until the administrative decision has been finalized.

*Id.* (citation omitted). The Court determined that a final site selection could not be made until the Commission completed two additional steps, and stated that "[u]nless and until the Commission makes a final site selection decision, there is no justiciable issue and no genuine controversy between the parties." *Id.* at 625, 407 S.E.2d at 791. The Court concluded that the Commission could

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

not be preliminarily enjoined in its process of site selection until the final site selection has been made. *Id.* at 625-26, 407 S.E.2d at 791.

[1] The conformity in essential points between the facts in *Granville County* and those in the instant cases dictates our conclusion that plaintiffs' claims are nonjusticiable. Like in *Granville County*, plaintiffs in the instant case seek declaratory and injunctive relief regarding the selection and testing of potential sites for a disposal facility for dangerous waste. Like in *Granville County*, the legislature has characterized the timely establishment of the disposal facility at issue as an "urgent problem" for North Carolina, the solution to which is essential to the protection of the public health and safety. Like in *Granville County*, the actions in the instant case were commenced when the selection process had been narrowed to two sites; no final decision has been made, and additional steps may or may not result in the selection of the Richmond County site over the Chatham/Wake County site, and vice versa. Like in *Granville County*, plaintiffs in the instant case have alleged violations of state law in the selection process. In addition, plaintiffs in the instant case have raised due process claims. *See Granville County*, 329 N.C. at 625, 407 S.E.2d at 791 (the rule prohibiting premature intervention of the courts "applies with special force to prevent the premature litigation of constitutional issues").

Accordingly, the decision of the trial court dismissing Counts I and II of Chatham and Wake Counties' complaint, and Counts I, II, and IV of Richmond County's complaint, is affirmed.

## DEFENDANTS' APPEALS

[2] The dispositive question is whether defendants' contention that applicable law does not require the preparation by defendants of an environmental impact statement prior to the characterization of the Richmond County and Chatham/Wake County sites is a moot issue.

Plaintiffs alleged in Count III of their complaints that defendants are required, pursuant to Chapter 104G and N.C.G.S. § 113A-4(2), to prepare a detailed environmental impact statement assessing potential environmental harm *prior to* the characterization of the Richmond County and Chatham/Wake County sites. According to plaintiffs, the invasive nature of the characterization work, including trench-digging, well-drilling, entry onto the properties by four-wheel drive vehicles, cutting and removal of trees,

708 IN THE COURT OF APPEALS

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

and removal of surface and subsoil samples for analysis, will have a significant impact on the ecological system of plants and animals which occupy the area. Defendants argue that Chapter 104G requires that only one EIS be prepared, *after* the characterization of both sites, because the characterization process itself yields the information on which the EIS must be based.

The trial court determined that plaintiffs' EIS claim presented a justiciable issue, and, after hearing on 4 and 5 September 1991, denied defendants' motion to. dismiss the claim. Plaintiffs subsequently applied for preliminary injunctions restraining defendants from performing characterization work at both sites. The trial court conducted separate evidentiary hearings on each application. With regard to Chatham and Wake Counties' application, the trial court, after considering the evidence, found in pertinent part that there would be no "significant effect on the environment or any potential lasting environmental effect resulting from the planned testing activities," and denied plaintiffs' application for a preliminary injunction. With regard to Richmond County's application, the trial court determined that characterization of the site could proceed in all respects, with the following exception: the court enjoined defendants from disturbing by machine any land on the site within any wetland, or within fifty feet of any hillside seep or plants listed on the state or federal protected species lists. At oral argument, the parties informed this Court that characterization of both the Richmond County and Chatham/Wake County sites had been proceeding for a substantial period of time and was virtually complete.

> In light of the foregoing, we find *Granville County* instructive:

> When, pending an appeal to this Court, a development occurs, by reason of which the questions originally in controversy between the parties are no longer at issue, the appeal will be dismissed for the reason that this Court will not entertain or proceed with a cause merely to determine abstract propositions of law or to determine which party should rightly have won in the lower court.

*Granville County*, 329 N.C. at 622, 407 S.E.2d at 789 (quoting *Benvenue Parent-Teacher Ass'n. v. Nash County Bd. of Educ.*, 275 N.C. 675, 679, 170 S.E.2d 473, 476 (1969) ). Because the characterization of both sites is virtually complete, plaintiffs' claim seeking to require the preparation by defendants of a *precharacterization*

**RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.**

[108 N.C. App. 700 (1993)]

EIS is moot. At this point, plaintiffs' only recourse with regard to defendants' alleged unlawful failure to prepare a precharacterization EIS is an action for damages, a remedy not sought in plaintiffs' complaints. Accordingly, defendants' appeals from the denial of their motion to dismiss the EIS claim are moot and are therefore dismissed.

Disposition of plaintiffs' appeals: Affirmed.

Disposition of defendants' appeals: Dismissed.

Judge LEWIS concurs.

Judge COZORT dissenting in part and concurring in part with separate opinion.

Judge COZORT dissenting in part and concurring in part.

I disagree with the majority's conclusion that *Granville County Board of Commissioners v. North Carolina Hazardous Waste Management Commission*, 329 N.C. 615, 407 S.E.2d 785 (1991) compels the affirmance of the trial court's dismissal of plaintiffs' claims that the Authority violated the General Statutes and its own rules. In *Granville*, plaintiff sought injunctive and declaratory relief on the basis that the North Carolina Hazardous Waste Commission had violated North Carolina statutes and its own administrative rules. The trial court *ex mero motu* granted a preliminary injunction on the basis that the Regional Agreement violated Article I, Section 6 of the North Carolina Constitution. The trial court never ruled on, and the Supreme Court never considered, the plaintiff's claims on statutory and rule violations. After finding the case moot, the North Carolina Supreme Court addressed the justiciability of the issue before the trial court. The Court noted that the rule prohibiting court intervention unless there is a genuine controversy existing between the parties applies "with special force to prevent the premature litigation of constitutional issues." *Id.* at 625, 407 S.E.2d at 791.

In this case, plaintiffs' claims are based on, and the trial court is asked to rule on, whether the Authority has "violated pertinent provisions of N.C.G.S. §104G-1, *et seq.*" In *Granville*, neither the trial court nor the North Carolina Supreme Court addressed plaintiff's claim that the Commission had violated state law and its

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[108 N.C. App. 700 (1993)]

own administrative rules. I believe the distinction is significant. If *Granville* is interpreted to mean that the counties can bring no claim in court until after the final site selection, which may take several years, then obvious and apparent defects in the proceedings could not be corrected for many years. Under that scenario, the selection process must begin again, perhaps doubling or trebling the time to resolve a problem the legislature found urgent. Surely, the Supreme Court did not intend such a result. *Granville* seeks to prevent *premature* court intervention on constitutional grounds. I do not believe it was intended to be a total bar to timely access to the courts to cure obvious defects in administrative proceedings. Court intervention would not be premature when there is such a genuine controversy between the parties. To hold otherwise runs perilously close to violating Article I, Section 18 of the Constitution of North Carolina, which mandates that "(a)ll courts shall be open; every person for an injury done to him in his lands, goods, person or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay."

Allowing such timely review of claims based on excess of lawful authority does not run afoul of the primary case relied upon by the Supreme Court in the *Granville* decision. The *Granville* court quoted extensively from *Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E.2d 18 (1960) for the proposition that " 'Courts will not undertake to control the exercise of discretion and judgment on the part of the members of a commission in performing the functions of a State agency.' " *Granville*, 329 N.C. at 625, 407 S.E.2d at 791 (quoting *Pharr*, 252 N.C. at 811, 115 S.E.2d at 24). The same passage quoted, however, leaves an opening for the type of claim brought by plaintiffs below. The *Pharr* court continued by stating that the court has no power to intervene "in the absence of fraud, manifest abuse of discretion or *conduct in excess of lawful authority* . . . ." *Granville*, 329 N.C. at 625, 407 S.E.2d at 791 (quoting *Pharr*, 252 N.C. at 811-12, 115 S.E.2d at 25) (emphasis added). The plaintiff counties' claims below alleged conduct in excess of lawful authority, and I believe they should be heard in accordance with the exception recognized by *Pharr* and quoted by *Granville*.

I further believe that allowing plaintiffs' claims regarding adherence to statutes and rules would not create a risk that the administrative process would be improperly delayed by frivolous claims for injunctive relief. No plaintiff would be entitled to

**N.C. ELECTRIC MEMBERSHIP CORP. v. N.C. DEPT. OF ECON. & COMM. DEV.**

[108 N.C. App. 711 (1993)]

preliminary injunctive relief unless evidence was presented which demonstrated probable cause plaintiff will be able to establish the rights asserted and a reasonable apprehension of irreparable loss unless immediate relief is granted. *Williams v. Greene*, 36 N.C. App. 80, 85, 243 S.E.2d 156, 159 (1978).

I therefore dissent from the portion of the majority opinion which affirms the trial court's dismissal of the plaintiffs' claims alleging that the Authority failed to follow statutes and regulations. I vote to reverse that portion of the trial court's orders and remand the matters for an evidentiary hearing on those claims.

I concur with the majority's opinion that the claims relating to the environmental impact statement (EIS) issue are now moot. I believe, however, that plaintiffs' claims regarding the EIS were justiciable, since they likewise dealt with whether the Authority followed state law. In my opinion the trial court did not err in denying defendants' motions to dismiss plaintiffs' EIS claims.