**RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.**

[335 N.C. 77 (1993)]

RICHMOND COUNTY v. THE NORTH CAROLINA LOW-LEVEL RADIO-ACTIVE WASTE MANAGEMENT AUTHORITY, A Body Corporate, AND CHEM-NUCLEAR SYSTEMS, INC.

---

CHATHAM COUNTY AND WAKE COUNTY v. THE NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

---

RICHMOND COUNTY v. NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

---

CHATHAM COUNTY AND WAKE COUNTY v. NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY AND CHEM-NUCLEAR SYSTEMS, INC.

No. 105A93

(Filed 5 November 1993)

**Environmental Protection, Regulation, and Conservation § 117 (NCI4th) — siting of low-level radioactive waste facility — preliminary injunction — necessity for completion of permitting process**

The Low-Level Radioactive Waste Management Authority may not be preliminarily enjoined in its process of site selection for a low-level radioactive waste disposal facility until the permitting process has been completed and the final site selection has been made.

**Am Jur 2d, Pollution Control § 276.**

Justice FRYE dissenting in part.

Appeal by plaintiffs Richmond, Chatham, and Wake Counties from the decision of a divided panel of the Court of Appeals, 108 N.C. App. 700, 425 S.E.2d 468 (1993), affirming in part orders of Long (James M.), J., filed in Superior Court, Chatham County, on 30 October 1991 allowing defendants' motions to dismiss made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure as to certain counts of plaintiffs' complaints and dismissing as moot defendants' appeals from those portions of the same orders denying defendants' motions to dismiss certain other counts. Heard in the Supreme Court 14 September 1993.

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

*James, McElroy & Diehl, P.A. by Gary S. Hemric, Mark T. Calloway, and John S. Arrowood, for plaintiff-appellant Richmond County.*

*Tharrington, Smith & Hargrove, by Michael Crowell, and Gunn & Messick, by Robert L. Gunn, for plaintiff-appellant Chatham County; and Wake County Attorney's Office, by Michael Ferrell, for plaintiff-appellant Wake County.*

*Michael F. Easley, Attorney General, by Gayl M. Manthei, Special Deputy Attorney General, and Smith Helms Mulliss & Moore, by Richard W. Ellis, Gary R. Govert, and Matthew W. Sawchak, for defendant-appellee North Carolina Low-Level Radioactive Waste Management Authority; and Moore & Van Allen, by David E. Fox, for defendant-appellee Chem-Nuclear Systems, Inc.*

MEYER, Justice.

In 1980, Congress enacted the Low-Level Radioactive Waste Policy Act, 42 U.S.C. §§ 2021b-2021j (1980). The Act declared as federal policy that states should be responsible for low-level radioactive waste generated within their borders and that such waste could be most safely and efficiently managed on a regional basis. 42 U.S.C. § 2021d(a)(1). The law authorized states to enter interstate compacts and encouraged their use by providing that, beginning 1 January 1986, any state that had an approved facility and belonged to an approved compact could refuse to accept waste from noncompact states without violating the Commerce Clause. In 1985, Congress amended the Act to move forward to 1 January 1993 the date on which states with waste facilities could ban shipments from noncompact states.

In 1983, North Carolina joined the Southeast Interstate Low-Level Radioactive Waste Management Compact (the Southeast Compact) with Alabama, Florida, Georgia, Mississippi, South Carolina, Tennessee, and Virginia. The compact is codified as Chapter 104F of the North Carolina General Statutes. The Compact Commission denominated South Carolina, which already had a low-level waste facility in Barnwell, as the first host state. In 1986, the Compact Commission chose North Carolina to be the second host to operate a facility for the eight states. The obligation of a host state is to operate a facility for twenty years or to dispose of 32 million

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

cubic feet of waste, whichever comes first. N.C.G.S. § 104F-1, art. V(e) (1990).

In response to the Compact Commission's decision, the General Assembly in 1987 enacted Chapter 104G of the North Carolina General Statutes. In N.C.G.S. § 104G-3, our General Assembly determined that "the generation of low-level radioactive waste is an unavoidable result of the needs and demands of a modern society." N.C.G.S. § 104G-3, para. 1 (1989). The General Assembly found that the safe and efficient management of this waste "presents urgent problems for North Carolina[ ] and that solutions to these problems are essential to the State's continued economic growth and to protection of the public health and safety and the environment." *Id.* To respond to these urgent problems and to fulfill North Carolina's obligations under the Southeast Compact, the General Assembly in 1987 created the Low-Level Radioactive Waste Management Authority (the Authority) and gave it the task of establishing a low-level radioactive waste disposal facility. N.C.G.S. § 104G-4 (1989); N.C.G.S. § 104G-6(a)(1) (Supp. 1992); *see* N.C.G.S. § 104F-1 (codifying the Southeast Compact).

The Authority, in turn, hired Chem-Nuclear Systems, Inc. (Chem-Nuclear), to assist it in siting, licensing, building, operating, and eventually closing the facility. *See* N.C.G.S. § 104G-6(a)(3) (Supp. 1992).

Chapter 104G of the North Carolina General Statutes contains a detailed procedural outline for the siting and licensing of North Carolina's disposal facility. *See, e.g.,* N.C.G.S. §§ 104G-9, -11 (1989). The Authority has been conducting site selection within this statutory framework for the last five years. Beginning in 1988, the Authority and its contractors examined the entire land mass of North Carolina and identified the areas most likely to meet the site suitability criteria previously adopted by the Authority and the state Division of Radiation Protection (DRP).[1] *See* 1 NCAC 37 .0201-.0207 (July 1988), *amendments proposed,* 7 N.C. Reg. 2393 (Feb. 1993), *proposed amendments revised,* 8 N.C. Reg. 232 (May 1993); 15A NCAC 11 .1228 (May 1992).

In early November 1989, the Authority designated four areas for "precharacterization," a heightened level of scrutiny that in-

---

1. DRP, an agency within the state Department of Environment, Health, and Natural Resources, is responsible for overseeing characterization testing and for licensing the North Carolina low-level radioactive waste disposal facility.

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

cludes limited on-site investigations. On 30 April 1990, the Authority selected a site in Chatham and Wake Counties (the Chatham/Wake site) and a site in Richmond County (the Richmond site) for "characterization" testing. Characterization is an environmental study intended to determine, among other things, whether a particular site is suitable for a low-level radioactive waste disposal facility. *See* 15A NCAC 11 .1204-.1208 (May 1992). Characterization testing on the Richmond and Chatham/Wake sites could not begin until DRP approved a characterization plan for each site. 15A NCAC 11 .1206(b). Chem-Nuclear prepared the comprehensive plans for submittal to DRP, and DRP circulated copies to numerous state agencies, including most of those responsible for environmental protection. On 16 August 1991, after about fourteen months of review, DRP approved revised versions of the characterization plans. Testing on the two sites is now in progress and is expected to be completed in late 1993.

By the lawsuits that are the subject of this appeal, the Counties sought an injunction to stop characterization of their respective sites, thereby preventing the Authority and Chem-Nuclear from determining whether those sites are suitable for a low-level radioactive waste disposal facility.

## THE CHATHAM AND WAKE COUNTIES ACTION

On 31 October 1990, Chatham County filed this action against the Authority, raising several claims concerning its activities in connection with a planned eight-state radioactive waste repository in North Carolina. The case was designated as an exceptional case pursuant to Rule 2.1 of the General Rules of Practice and was assigned to Judge James M. Long. Chem-Nuclear, the major contractor for the project, intervened as a defendant on 4 February 1991.

Chatham County filed a three-count amended complaint on 23 January 1991, which, in Count I, alleges that the Authority committed multiple violations of its governing statute and regulations both through actions and failures to act. Count II alleges a violation of due process in that the vote by the Authority to hire Chem-Nuclear was tainted by a conflict of interest. Count III alleges that the defendants' failure to prepare an environmental impact statement prior to characterization violates the North Carolina Environmental Policy Act.

IN THE SUPREME COURT          81

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

The trial court denied a motion by the defendants to dismiss based on lack of standing, and thereafter, extensive discovery occurred involving numerous depositions and the production of many documents. The trial court permitted Wake County to intervene as a plaintiff on 4 September 1991. Pursuant to the order allowing it to intervene, Wake County filed a complaint that contained the same three counts as Chatham County's amended complaint.

On 16 August 1991, the defendants moved to dismiss all counts of the amended complaint for lack of ripeness. The motion was based solely on the 14 August 1991 decision of this Court in *Granville Co. Bd. of Comrs. v. N.C. Haz. Waste Mgmt. Comm.*, 329 N.C. 615, 407 S.E.2d 785, *reh'g denied*, 409 S.E.2d 593 (1991) [hereinafter *Granville County*].

A hearing was held on the motion to dismiss on 4 September 1991. The trial court ruled in open court on 5 September 1991 that defendants' motion to dismiss would be allowed for Counts I and II but not Count III.

Beginning on 16 September 1991, the trial court held a preliminary injunction hearing on the claim that an environmental impact statement or environmental assessment must be prepared prior to characterization. Following the hearing, the court entered an order denying Chatham and Wake Counties' motion for a preliminary injunction.

On 26 September 1991, Chatham and Wake Counties filed a second amended complaint that contained two allegations: (1) that no environmental assessment had been prepared by the Authority as required by 1 NCAC 25 .0401, and (2) that no environmental impact statement had been prepared by the Authority as required by N.C.G.S. § 113A-4(2).

On 30 October 1991, the trial court entered its written order granting the defendants' motion to dismiss for lack of ripeness as to Counts I and II of the amended complaint but denying the motion as to Count III. This order was certified for immediate appeal pursuant to Rule 54(b). The Court of Appeals consolidated the appeal with that of Richmond County and, on 2 February 1993, affirmed the trial court's dismissal of Counts I and II of the plaintiffs' complaint. Judge Cozort dissented. Pursuant to N.C.G.S. § 7A-30(2), plaintiffs filed their notice of appeal in this Court on 9 March 1993.

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

THE RICHMOND COUNTY ACTION

On 27 February 1990, Richmond County filed a complaint against the Authority alleging that the Authority, working in concert with Chem-Nuclear, had been involved in the evaluation of potential suitable sites for a low-level radioactive waste facility and that a recommendation by Chem-Nuclear was going to be made to the Authority that the Authority select a site in Richmond County for characterization. The complaint further alleged that the Authority had not complied with the provisions of Chapter 113A of the North Carolina General Statutes and the pertinent provisions of the North Carolina Administrative Code, in that the Authority and Chem-Nuclear had failed to prepare an environmental impact statement concerning the effect of characterization on the Richmond site. The County requested a preliminary injunction prohibiting the Authority from designating Richmond County as a site for characterization and asked that this injunctive relief be made permanent upon a trial on the merits.

On 28 March 1990, a hearing was conducted before Judge Preston Cornelius, and the court entered an order that effectively continued the hearing on the preliminary injunction request and maintained the status quo at the Richmond site, while allowing access to the property by the Authority to perform visual inspections necessary for the preparation of a detailed site characterization plan.

On 6 June 1990, Richmond County filed an amended complaint, adding Chem-Nuclear as a defendant. The amended complaint carried forward as its third count the environmental impact statement claim alleged in the initial lawsuit and added two additional counts.

The first count of the amended complaint alleged that a failure by the Authority to comply with the provisions of Chapter 104G of the North Carolina General Statutes, particularly as those statutes related to the site selection process, constituted a violation of North Carolina law and procedural due process. The County sought preliminary and permanent injunctive relief and a declaratory judgment that the statutory provisions and procedural safeguards set forth in Chapter 104G were being disregarded.

In the second count of its amended complaint, Richmond County alleged that the process of site selection as it had been undertaken by defendants was flawed in many critical respects, primarily

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

because of defendants' reliance upon incorrect, incomplete, or outdated information. The second count also alleged that Chem-Nuclear's recommendation to characterize a site in the County was unreliable and incorrect because of numerous substantive errors in the precharacterization report. On 8 February 1991, Richmond County filed an amendment to the amended complaint, adding a fourth count to its lawsuit.

On 9 July 1990, defendants answered and filed various motions to dismiss. On 14 February 1991, the trial court signed an order denying defendants' motions to dismiss plaintiff's complaint for lack of standing. Following this entry, the parties engaged in a very substantial discovery process.

On 16 August 1991, defendants filed a joint motion to dismiss pursuant to Rule 12(b)(6) on the bases that the claims were not ripe for adjudication, were nonjusticiable, and that the trial court lacked subject matter jurisdiction. Defendants' motion was based solely upon the 14 August 1991 decision of this Court in *Granville County*, 329 N.C. 615, 407 S.E.2d 785.

On 5 September 1991, the trial court entered an order in open court allowing defendants' motion to dismiss with respect to Counts I, II, and IV of Richmond County's amended complaint and denied the motion with respect to Count III (the environmental impact statement count). The court also allowed plaintiff's motion to certify this ruling as a final judgment for purposes of immediate appeal pursuant to Rule 54(b). This ruling was later memorialized in a written order dated 30 October 1991. From the order of dismissal, plaintiff appealed to the North Carolina Court of Appeals. The Court of Appeals consolidated the appeal with that of Chatham and Wake Counties and, on 2 February 1993, filed an opinion affirming the trial court's order. Judge Cozort dissented, and plaintiff Richmond County gave notice of appeal on 4 March 1993.

We note at the outset that the panel below unanimously concluded, and we agree, that the defendants' appeals from the denial of their motions to dismiss the environmental impact statement claims are moot and dismissed the same.

The consolidated cases are before this Court solely by virtue of the dissent below, and our consideration is limited to the single issue addressed in the dissent: whether our recent decision in *Granville County*, 329 N.C. 615, 407 S.E.2d 785, compels the affirmance

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

of the trial court's dismissal of plaintiffs' claims in Counts I and II of Chatham and Wake Counties' complaint and Counts I, II, and IV of Richmond County's complaint. For essentially the same reasons expressed in the majority opinion of the panel below, we conclude that it does, and we therefore affirm the decision of the Court of Appeals.

Though in *Granville County*, this Court interpreted and applied Chapter 130B of our General Statutes relating to the North Carolina Hazardous Waste Commission (the Commission), whereas, here, we are involved with Chapter 104G relating to the Low-Level Radioactive Waste Management Authority, the facts are remarkably similar, as are the two Acts. In determining that our *Granville County* case governs the outcome of the appeals in the present case, the panel below noted the following similarity in the "essential" points:

> Like in *Granville County*, plaintiffs in the instant case seek declaratory and injunctive relief regarding the selection and testing of potential sites for a disposal facility for dangerous waste. Like in *Granville County*, the legislature has characterized the timely establishment of the disposal facility at issue as an "urgent problem" for North Carolina, the solution to which is essential to the protection of the public health and safety. Like in *Granville County*, the actions in the instant case were commenced when the selection process had been narrowed to two sites; no final decision has been made, and additional steps may or may not result in the selection of the Richmond County site over the Chatham/Wake County site, and vice versa. Like in *Granville County*, plaintiffs in the instant case have alleged violations of state law in the selection process. In addition, plaintiffs in the instant case have raised due process claims. *See Granville County*, 329 N.C. at 625, 407 S.E.2d at 791 (the rule prohibiting premature intervention of the courts "applies with special force to prevent the premature litigation of constitutional issues").

*Richmond Co. v. N.C. Low-Level Radioactive Waste Mgmt. Auth.*, 108 N.C. App. at 707, 425 S.E.2d at 472.

Even a cursory reading of the two Acts in question reveals that the statutory missions of the two agencies (the Commission and the Authority) as well as the statutorily mandated site selection processes are remarkably similar. Each of the two agencies has

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

exclusive authority to establish a class of waste facilities, and each is charged with doing urgent work to protect public safety and the environment. Indeed, in the selection of waste sites, the two agencies are following nearly identical multi-step processes, and both have been challenged in the courts at the same early point in the site selection process.

While the Authority deals with a different type of waste, it is quite clear that our legislature considers disposal of both types of waste to be urgent problems and has charged the two agencies with similar missions. In all important respects, the Authority's site selection process mirrors that of the Commission which we addressed in *Granville County*. Here, as was the case in *Granville County*, the agency had adopted procedures and criteria for site selection; had incorporated in its procedures and criteria rules adopted by the Department of Environment, Health and Natural Resources; had, after studying the land mass of the entire state, identified a large number of potentially suitable sites; and had designated two sites for more detailed, on-site studies before the present lawsuits were filed. The final on-site testing had not been completed, and thus, a preferred site had not been selected, the required environmental impact statement had not been drawn, and the required approval of other agencies had not been secured. As was the case in the Court of Appeals, at oral argument before this Court, the parties informed this Court that characterization of both the Richmond site and the Chatham/Wake site is now virtually complete.

The urgency of the problem with regard to hazardous waste about which we spoke in *Granville County* is equally compelling with regard to low-level radioactive waste. In *Granville County*, we emphasized that "[o]ur legislature has determined that the management of hazardous waste is *essential* to protect the public health, safety, and environment and that the *timely* establishment of a hazardous waste facility is one of the *most urgent* problems facing North Carolina." *Granville County*, 329 N.C. at 624, 407 S.E.2d at 790 (citing N.C.G.S. § 130B-3 (1989) ); *see also id.* at 618, 407 S.E.2d at 787 (quoting same statute). In N.C.G.S. § 104G-3, the legislature has made virtually identical findings about low-level radioactive waste disposal. Elsewhere, the General Assembly has directly confirmed that in its judgment, hazardous waste disposal and low-level radioactive waste disposal are equally pressing problems:

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

The General Assembly of North Carolina hereby finds and declares that the safe management of *hazardous wastes and low-level radioactive wastes,* and particularly the timely establishment of adequate facilities for the disposal and management of hazardous wastes and low-level radioactive wastes is *one of the most urgent problems* facing North Carolina. The safe management and disposal of these wastes are essential to continued economic growth and to protection of the public health and safety. When improperly handled, these wastes pose a threat to the water, land, and air resources of the State, as well as to the health and safety of its citizens.

N.C.G.S. § 143B-285.10(a) (1990) (emphasis added).

The harmful effects of premature litigation that we addressed in *Granville County* with regard to the siting of a hazardous waste facility apply with equal force to the siting of the low-level radioactive waste facility here.

Documents before this Court indicate that the Authority has already defended three preliminary injunction proceedings, including one that occurred prior to our decision in *Granville County,* which resulted in an injunction that remained effective for sixteen months. In addition, the Authority itself had to seek injunctive relief to obtain routine well permits that were withheld by Richmond County under the guise of an environmental protection ordinance that the trial court found to have no application to the Authority. Absent some action by this Court, there appears nothing to prevent future injunctive proceedings to delay a final site selection.

Other documents before us reveal that delay in establishing the facility in question exposes the state to severe sanctions from its compact partners, including financial penalties and the possible early closing of the South Carolina regional facility. Under South Carolina law, the current regional facility for low-level radioactive waste will stop accepting waste from North Carolina no later than 1 January 1996, which is shortly before the Authority expects North Carolina's facility to begin operation even if currently established deadlines are met. *See* S.C. Code Ann. § 48-48-80(A)-(H) (Supp. 1992). If North Carolina must dispose of its waste before it has a facility capable of accepting it, the public interest demands that it do so for as short a time as possible.

**RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.**

[335 N.C. 77 (1993)]

Plaintiff-Counties contend that this Court's reasoning in *Granville County* should not apply to the cases at bar. We disagree. Plaintiffs contend that our *Granville County* decision applies only to the unique facts and claims presented in that case; that, here, they are attacking generic and illegal defects in the Authority's selection process, whereas *Granville County* related to an attack on the selection of a particular site; that, here, the Authority's selection of sites for characterization is not the same as the Commission's selection of sites for on-site testing in Granville County; and that, unlike *Granville County*, these actions do not challenge a state agency's exercise of discretion.

After carefully considering these assertions, we find them to be illusory. Each of them assumes that our decision in *Granville County* was limited to the specific facts and claims presented in the precise context of that case. Correctly viewed, however, in *Granville County*, this Court was concerned with the potential of interlocutory injunctions to disrupt an urgent site-selection process, whatever claim or legal theory gave rise to them. Our decision in *Granville County* bars all site-selection-related litigation until site selection has been completed. Our reasoning was that "[u]nless and until the Commission makes a final site selection decision, there is no justiciable issue and no genuine controversy between the parties." *Granville County*, 329 N.C. at 625, 407 S.E.2d at 791. That reasoning applies with equal strength to the Authority and the claims at issue here.

The distinction between site-specific and nonsite-specific claims, between the selection of sites for on-site testing and characterization, or between attacks on the agencies' exercise of discretion and defects in a site-selection process played no part in our decision in *Granville County*. Nor did our reliance on *Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E.2d 18 (1960), and other cases cited in *Granville County* imply, as plaintiffs argue, that there should be exceptions to the ripeness requirement based upon the particular allegations of the complaint.

We were concerned in *Granville County*, as we are here, with the potential for disruption and delay "[i]n matters of this nature which seek solutions to extremely urgent problems, where the solutions are essential to protect the public health and safety." *Granville County*, 329 N.C. at 624, 407 S.E.2d at 790; *see* N.C.G.S. § 143B-285.10(a) ("these wastes pose a threat to the water, land,

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

and air resources of the State, as well as to the health and safety of its citizens").

As we held in *Granville County* with regard to the Hazardous Waste Commission, we now hold that the Low-Level Radioactive Waste Management Authority may not be preliminarily enjoined in its process of site selection until the permitting process has been completed and the final site selection has been made. The Court of Appeals correctly concluded that this case is controlled by our recent decision in *Granville County* and correctly affirmed the trial court's dismissal of Counts I and II of Chatham and Wake Counties' complaint and Counts I, II, and IV of Richmond County's complaint on the grounds that such claims do not present justiciable issues and that no genuine controversy exists between the parties. The decision of the Court of Appeals is therefore affirmed.

AFFIRMED.

Justice FRYE dissenting in part.

I respectfully dissent from that part of the Court's opinion which concludes that the Court of Appeals correctly affirmed the trial court's dismissal of Counts I and II of Chatham and Wake Counties' complaint and Counts I, II, and IV of Richmond County's complaint based solely on our decision in *Granville Co. Bd. of Comrs. v. N.C. Haz. Waste Mgmt. Comm.*, 329 N.C. 615, 407 S.E.2d 785, *reh'g denied*, 409 S.E.2d 593 (1991) [hereinafter *Granville County*]. For essentially the same reasons stated by Judge Cozort in his dissenting opinion in the Court of Appeals, I do not believe that our decision in *Granville County* requires the dismissal of the complaints at this stage of the proceedings.

It should be emphasized that the issue before this Court is not whether the declaratory and injunctive relief sought by plaintiffs should be granted, but whether the actions should be maintained at all, that is, whether a justiciable issue exists.

"A justiciable issue has been defined as an issue that is 'real and present as opposed to imagined or fanciful.' *In re Williamson*, 91 N.C. App. 668, 373 S.E.2d 317 (1988) (*citing* [*Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 344 S.E.2d 55, *disc. rev. denied*, 318 N.C. 284, 348 S.E.2d 344 (1986)], . . .). In order to find complete absence of a justiciable issue it must conclusively appear that such issues are absent even

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss. [*Sprouse*, 81 N.C. App.] at 682-3, 373 S.E.2d at 325. (Citation omitted.)"

*Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991) (quoting *K & K Development Corp. v. Columbia Banking Fed. Savings & Loan*, 96 N.C. App. 474, 479, 386 S.E.2d 226, 229 (1989)). Giving the pleadings in this case the indulgent treatment they are entitled to receive on a motion to dismiss, I conclude that the issues are real and present and not imagined or fanciful. Thus, dismissal on the basis of nonjusticiability is improper.

Unlike the majority which reads *Granville County* as "bar[ring] all site-selection-related litigation until site selection has been completed," I read *Granville County* as providing "guidance to the lower courts as to their proper and timely role" in cases such as these, within the context of the facts, as they occurred in that particular case. *Granville County*, 329 N.C. at 623, 407 S.E.2d at 790. Proceeding from this construction of *Granville County*, I find the claims in question to be justiciable, that is, ripe for decision.

In *Granville County*, the Granville County Board of Commissioners initiated an action against the North Carolina Hazardous Waste Management Commission [hereinafter the Commission], seeking a temporary restraining order, a preliminary order and a permanent injunction to enjoin the Commission from siting a hazardous waste treatment facility on a specific parcel of land in Granville County, alleging that the Commission had violated statutory and administrative rules prohibiting the siting of a hazardous waste facility within twenty-five miles of a polychlorinated biphenyl (PCB) landfill facility. The Commission's process included selection of "suitable" sites for further study, designation of a "preferred" site for the permit application, and issuance of a permit. At the time the action was brought, the parcel of land in Granville County had been selected as a "suitable" site but had not been designated a "preferred" site.

The agency decision at issue in *Granville County* was the Commission's choice of a particular site which would not have been final until several additional steps occurred. In the present case, plaintiffs' claims attack defects in the Low-Level Radioactive Waste Management Authority's [hereinafter the Authority] selection process which will remain defects no matter what site is ultimately

90          IN THE SUPREME COURT

RICHMOND CO. v. N.C. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[335 N.C. 77 (1993)]

chosen. Plaintiffs alleged the following: that the Authority had failed to comply with applicable law in its evaluation of potential suitable sites for placement of a low-level radioactive waste disposal facility; that the process of site selection as it had been undertaken by defendants was flawed, primarily due to defendants' reliance upon incorrect, incomplete, or outdated information, and because of substantive errors in the precharacterization report; and that the Authority's vice-chairman had failed to disclose that her husband owned stock in the grandparent company of Chem-Nuclear and in various low-level radioactive waste generators which would use the proposed facility.

The factual differences between *Granville County* and the present case are more than "illusory" as the majority asserts in its opinion but instead are critical to a determination of whether the case at hand is premature. Contrary to the majority's opinion, this Court in *Granville County* did not set a broad rule of ripeness but used the specific facts as they occurred in that case in analyzing whether the suit was justiciable.

The majority sets forth numerous public policy considerations which undoubtedly deserve great attention from this Court; however, they do not justify shutting down the courts to any and all site-related litigation "until the permitting process has been completed and the final site selection has been made." As Judge Cozort stated in his dissent:

> To hold otherwise runs perilously close to violating Article I, Section 18 of the Constitution of North Carolina, which mandates that "(a)ll courts shall be open; every person for an injury done to him in his lands, goods, person or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay."

*Richmond Co. v. N.C. Low-Level Radioactive Waste Mgmt. Auth.,* 108 N.C. App. 700, 710, 425 S.E.2d 468, 474 (1993) (Cozort, J., dissenting in part) [hereinafter *Richmond County*]. The majority's decision could delay the correction of obvious and apparent defects in the proceedings for years. Equally as important as the public policy considerations discussed at length by the majority are concerns involving the ramifications of a lengthy, elaborate and complicated process of evaluation, study and final selection of a site which could be reversed by litigation that, absent the majority's decision, could have addressed the problem early on.

Our decision in *Granville County* should not serve as a complete bar to the courts, irrespective of the facts and circumstances, in cases where genuine controversies exist between parties such as the ones at hand. As Judge Cozort observed:

[A]llowing plaintiffs' claims regarding adherence to statutes and rules would not create a risk that the administrative process would be improperly delayed by frivolous claims for injunctive relief. No plaintiff would be entitled to preliminary injunctive relief unless evidence was presented which demonstrated probable cause plaintiff will be able to establish the rights asserted and a reasonable apprehension of irreparable loss unless immediate relief is granted.

*Richmond County*, 108 N.C. App. at 710-11, 425 S.E.2d at 474-75 (quoting *Williams v. Greene*, 36 N.C. App. 80, 85, 243 S.E.2d 156, 159, *rev. denied*, 295 N.C. 471, 246 S.E.2d 12 (1978)).

Thus, I respectfully dissent from that part of the majority opinion which holds that *Granville County* compels dismissal of plaintiffs' claims on the grounds that such claims do not present justiciable issues and that no genuine controversy exists between the parties.